The CHIEF JUSTICE
 

 delivered the opinion of the court. Two propositions have been pressed upon our attention, ábly and earnestly, in behalf of the plaintiff in error.
 

 The first of them will be first considered.
 

 The answer avers, substantially, that the money tendered was part of the first' moneys collected in Lane County after the assessment of 1863, and the demurrer admits the truth of the answer.
 

 The fact therefore may be taken as established, that the
 
 *74
 
 taxes for that year, in Lane County, were collected in United States notes.
 

 But was this'in conformity,with.the laws of Oregon?
 

 In this court the construction given by the State courts 'to the.laws of a State, relating' to local affairs, is uniformly-received as the true construction; and the question first, stated must have been passed upon in reaching a conclusion upon the demurrer, both by the Circuit Court for the county and by thé Supreme Court of the State! Both courts must have held that .the statutes of Oregon, either directly or by clear implication,' required the collection of taxes in gold mnd silver coin.
 

 Nor do we perceive anything strained or unreasonable in this construction. The laws of;Oregon, as quoted in the brief for the State, provided that'“the sheriff shall pay over to the county treasurer the full amount of the- State and school taxes, in gsold and silver coin;” and that “the several c'ounty treasurers shall pay over to the State treasurer the ,St4tfe tax, in gold and silver coin.”, •
 

 It is certainly a legitimate, if not a necessary inference, that [hese taxes were ■ required to be collected in coin. Nothing short of. express words would warrant-us in saying that the1 laws authorized collection in one ■ description ■ of money from the people, and required payment over of the same taxes into the' county and State treasuries in'another.
 

 If, in our judgment, however, this point were otherwise,' we should still be bound by the soundest principles of judii cial administration, and by a long train of decisions in this court, to regard the judgment of the Supreme Court Of Oregon, so far as it depends on the right construction of the 1 statutes'of that State, as free from error.
 

 The séeond proposition remains to. be examined, and this . inquiry brings us to the consideration of the acts of Com gress, authorizing the. issue of the .notes in which the tender' wás made.
 

 ■ The first of these was the act of February 25,1862,,which authorized the Secretary of the- Treasury to issue,, on the
 
 *75
 
 credit of the .United States, one hundred and .fifty millions of dollárs in United' States notes, and provided thát these notes “'shall be' receivable in payment of all taxes, internal duties, excises, debts, and demands .due to the United States, except duties on, imports, and of all claims and demands against-the United States of every kind whatsoever, except interest on bonds apd notes, which .shall be, paid in coin;. and ’shall also be lawful money and. legal tender in payment of all debts, public and private, within the .United States, except.duties on imports and interest as aforesaid.”
 

 The second act contains a provision nearly in the same words with that just'recited, and under these two acts two.thirds of the entire issue was authorized. It is unnecessary, therefore, to-refer'to the third act, by which the notes to be ,issued under ‘it are not in terms made receivable and payable, but are simply declared to be lawful money and a legal tender.
 

 In the first act no emission was authorized of any notes under five dollars, nor in the other two of any under one dollar. The notes, authorized by different statutes, for parts of a dollar, were never declared to be lawful money or -a legal tender.
 
 *
 

 . It is obvious, therefore, that a legal tender in United States notes of the precise amount of taxes admitted to be due- to the State could not.be made. Coin was then, and is now, the only-legal tender: fpf debts less than one dollar. In the view which we take of this ease, this is not important. .‘It is mentioned only to show that the general words “all debts” were not intended to be takenih a sense absolutely literal:
 

 We proceed then to inquire whether, upon a sound construction of the acts,' taxes iniposed by a State government upon the people of the State, are debts within their true meaning.
 

 Tu examining this question it will be proper to give some attention to the constitution of the States and to their reía tions as United States.
 

 
 *76
 

 ^
 
 The people of the United States constitute one nation, under one government., and this government, within the scope of the powers.with which it is invested, is supreme. On the other hand, th.e people of each State compose a State, having its own' government, and endowed with all the functions essential to separate and independent existence. The States disunited might continue to exist. Without the States in union there could be no such-political body as the United States.
 

 ■ Both the States and the United States existed before the-Constitution. The people, through that instrument, established a more perfect union by.substituting a national government, acting, with ample power, directly upon the citizens, instead of the Confedérate government, which acted with powers, greatly restricted, only upon the States. But in many articles of the Constitution the necessary existence of the States, and, within their proper spheres, the independent authority of the States, is distinctly recognized. To them nearly the whole charge of interior regulation is committed or left; to them and to-the people all powers not expressly delegated to the national government are reserved. The general condition was well stated by1 Mr. Madison in the Federalist, thus: “ The Federal and State governments ai’e in fact but different agents and trustees of the people, constituted with different powers and designated for different purposes.”
 

 Now, to the existence of the States,, themselves necessary to the existence of the United States, the power of taxation i§ indispensable. It is an essential function of government. It was exercised by the Colonies; and when the Colonies became States, both before and after the formation of the Confederation, it was exercised by the new governments. Under the Articles of Confederation the government of the United States was limited in the exercise- of this power to requisitions upon the States, while the whole power of direct and indirect taxation of persons and property, whether by taxes on polls, or duties on imports, or duties on internal produe-, tion, manufacture, or use, was acknowledged to belong ex
 
 *77
 
 clusively to the States, without any- other limitation than that of non-interference with certain treaties made by Congress. The Constitution, it is true, greatly changed this condition of things. It gave the power to tax, both directly and indirectly, to the national government, and, subject to the one prohibition of any tax upon exports and to the conditions of uniformity in respect to indirect and of proportion in respect to direct taxes, the power was given without any express reservation. On the other hand, no power to tax exports, or imports except for a single purpose and to an insignificant extent, or to lay any duty on tonnage, was per-' mitted to the States. In 'respect, however, to property, busi-. ness, and persons, within their respective limits, their power of taxation remained and remains entire. It is indeed a concurrent power, and in the case of a tax on the same subject by both governments, the claim of the United States, as the supreme authority, must be preferred; but with this quali-, fieation it is absolute., The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the States commit the exercise of the power. That discretion- is restrained only by the will of’ the people expressed in the State constitutions or through elections, and by the' condition that -it must not be so used as to burden or embarrass the operations' of the -national government. There is nothing in the Constitution which contemplates or authorizes any direct abridgment 'of this power by national legislation. To the extent just indicated it is as complete in the States as the like power, within the limits of the Constitution, is complete in Congress. If, therefore, the condition of any State, in the judgment of its legislature, requires the collection.of taxes in kind, that is to say, by the delivery to tbe proper- oificers ,of a certain proportion of products, or in gold and silver bullion, or in gold and silver coin, it is not easy to see upon what- principle the national legislature can interfere with the exercise, to that end, of this power, original in the States, and never as yet surrendered. If this- be- so, it is, certainly,
 
 *78
 
 . a.reaáouable conclusión'that Congress did not «intend, by'the-general terms of the Currency acts, to restrain the exercise of'this power in the. manher shown by the statutes of Oregon.;
 

 Other considerations strengthen this'conclusion. , It cannot escape observation that the provision intended’to give currency to the United States notes in the two acts of 1862, consists of- two quite -distinguishable clauses. 'The- first of these-clauses makes those notes receivable inpayment of all dqes to the United‘States,, and payable In .satisfaction ,of All démands- against the IJnited States, with specified, exceptions;-the-eecond'makes them'lawful money, and a legal tender' in-payment of. debts, public and private, 'within .the United States, With the'-same exceptions!
 

 It seems quite probable that, the first clause only, was-in-the original bill, and that the second was afterwards introduced during its-progress-into an'act. However this pray he/'the facf that both clauses were made párf of the act of February, and-were retained in the act of -July, 1862, indicates clearly enough the ' intention of Congress that, both shall be .construed together. Now, in the'first clause, taxes áre'plainly distinguished; in- enumeration; from debts;-arid it. is not- an unreasonable 'inference, that the word debts in the other clause was not intended to include taxes.
 

 It must, be observed 'that (the first clause, which may be called the receivability and payability -clause, imposes'no- restriction -whatever upon the States in the collection of taxes. It- makes' the notes receivable for national taxes, but does Hot make them receivable for. State taxes.-. On the Contrary, the express reference to receivability by the national government, and the omission of all' reference to- receivability by the State governments, excludes the hypothesis of an. intention on, the part of Congress to cdnipel the. States’to receive them as revenue.
 

 . And it must' also be observed that any.const’ructiOn of the" second, or, as it may well enough be called, legal-tender clause, /that includes -dues for taxes under the words .debt’s; public and private, must deprive the first, clause, of all effect whatever» For if those words, rightly apprehended, include
 
 *79
 
 State taxes, they certainly include national taxes'also; and if they include national, taxes, the clause making them receivable for such taxes was wholly unnecessary and superfluous.
 

 It-is also proper to be observed, that a technical construction of the words in question'might defeat the main purpose óf the act, which, doubtless, was to provide a currency in which the receipts arid, payments incident to the •exigencies’ of the then existing civil war might be made.
 

 In his work on the Constitution,, the late Mr. Justice Story, whose praise as a jurist is in all .civilized lands, speaking of the, clause in the Constitution giving’to Congress the power to lay and collect taxes, says, of the theory which would limit the power to the object' of paying the debts, that, thus limited, it would bé only-a power to provide for the payment of debts
 
 then existing.
 

 *
 

 ' And certain!/, if a harrow and limited interpretation would thus restrict the. word debts in- the Constitution, the same sort of interpretation would, in like manner, restrict-the same wprd in the act. Such an interpretation needs only to be mentioned to be rejected. We refer to it only to show, that a right construction must'be sought through larger and less technical views. ’ We may, then, safely decline either to limit fh,e word debts to existing dues, or to extend its meaning so as to embrace all dues of whatever origin and description.
 

 ' What then is its true sense ? The most obvious,, and, as, it seems to .us, the-most rational' answer to this question is, that Congress must have had in contemplation debts origb nating in contract or demands carried into judgment, and only, debts of this character. This is the commonest and most natural use of the word. Some strain is felt upon the . understanding when an attempt is made to extend it so, as to include taxes imposed by legislative authoi’ity, and there ' should be no such strain in the interpretation of a law like this.
 

 We aré the more ready to adopt this view, because the
 
 *80
 
 greatest of English elementary writers upon law, when treating of debts in their various descriptions, gives no hint that taxes come within either;
 
 *
 
 while American State courts, of the highest authority, have refused to treat liabilities for taxes as debts, in the ordinary sense of that word, for which actions of debt may be maintained.
 

 The first of these cases was that of Pierce v.
 
 The City of
 
 Boston,
 
 †
 
 1842, in which the defendant attempted to set off against a demand of the plaintiff certain taxes due to the city. .The statute allowed mutual debts to be set off, but the court • disallowed the right to set off taxes. This case went, indeed, upon the construction of the statute1 of Massachusetts, and did not turn on the precise point before us; but- the language of the court shows that taxes were not regarded as debts within the common understanding of the word.
 

 The second case was that of
 
 Shaw
 
 v.
 
 Pickett,
 

 ‡
 

 in which the Supreme Court of Vermont said, “ The assessment of taxes does not create a debt that can be enforced by suit, or upon w'hich a promise to pay interest can be implied. It is a proceeding
 
 in invitum.”
 

 - The next case was that of the
 
 City of Camden
 
 v.
 
 Allen,
 

 §
 

 1857. That was an action of debt brought to recover a tax by the municipality to which it was due. The language of the Supreme Court of New Jersey was still more explicit: “ A tax', in its essential characteristics,” said the court, “ is not a debt nor ill the nature of a debt. A tax- is an impost levied by authority of government upon its citizens, or subjects, for the support of the State. It is hot founded on contract or agreement. It operates
 
 in invitum.
 
 A debt is a sum of money due by.certain and express agreement. It originates in- and is founded upon contracts express or implied.”
 

 These decisions were all made before the acts of 1862 were passed, and they may have had some influence upon the choice of the words used. Be this as it may, we all think that the interpretation which they sanction is w?ell warranted.
 
 *81
 
 "We cannot attribute to1 the legislature an intent to include taxes under .the term debts without1 something more than appears in the acts to show that intention.
 

 The Supreme Court of California, in 1862, had the construction of these acts under consideration in the case of
 
 Perry
 
 v.
 
 Washburn.
 

 *
 

 The decisions which we have cited were referred to by Chief Justice Field, now holding a seat on this bench, and the very question we are now1 considering, “What did Congress intend by the act?” was answered in these words: “ Upon this question we are clear that 'it-only intended by the terms debts, public and private, such, obligations for the payment of money as are founded upon contract.”
 

 . In whatever light, therefore, we. consider this question, whether in the light of the conflict between the legislation of Congress and the taxing power of the States, to which the interpretation,'.insisted on in behalf of the County of Lane,' would give occasion, or in the light of the language of the acts themselves, or in the light of the decisions to which we have referred, we And ourselves brought to the same conclusion, that the clause making the United States notes a legal tender for debts has no reference to taxes impoáed by State authority, but relates only to debts in- the ordinary sense of the word, arising out of simple contracts or contracts by specialty, which include judgments and recognizances!
 
 †
 

 Whether the word debts, as used in the act, includes obligations expressly made payable, or adjudged, to be paid in coin, has been argued in another case. We express at present, no opinion on that question.
 
 ‡
 

 The judgment of the Supreme Court of Oregon must be
 

 Affirmed.
 

 *
 

 12 Stat. at Large, 592; Ib. 711.
 

 *
 

 1 Story on the Constitution, 639, § 921.
 

 *
 

 1 Blackstone’s Comm. 475, 6
 

 ‡
 

 26 Vermont, 486.
 

 †
 

 3 Metcalf, 520.
 

 §
 

 2 Dutcher, 398.
 

 *
 

 20 California, 350.
 

 †
 

 1 Parsons on Contracts, 7.
 

 ‡
 

 See infra, pp. 229, 258, Bronson
 
 v.
 
 Rodes, and Butler
 
 v.
 
 Horwitz