## McDONALD, Receiver, *v.* WILLIAMS.[1]

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 257. Argued April 21, 1899. — Decided May 15, 1899.

The receiver of a national bank cannot recover a dividend paid to a stockholder not at all out of profits, but entirely out of capital, when the stockholder receiving such dividend acted in good faith, believing the same to be paid out of profits, and when the bank, at the time such dividend was declared and paid, was not insolvent.

THIS suit was commenced in the Circuit Court of the United States for the Southern District of New York. It was brought by the plaintiff, as receiver of the Capital National Bank of Lincoln, Nebraska, for the purpose of recovering from the defendants, who were stockholders in the bank, the amount of certain dividends received by them before the appointment of a receiver.

Upon the trial of the case the Circuit Court decreed in favor of the plaintiff for the recovery of a certain amount. The defendants appealed from the decree, because it was not in their favor, and the plaintiff appealed from it, because the recovery provided for in the decree was not as much as he claimed to be entitled to. Upon the argument of the appeal in the Circuit Court of Appeals certain questions of law were presented as to which that court desired the instruction of this court for their proper decision.

It appears from the statement of facts made by the court that the bank suspended payment in January, 1893, in a condition of hopeless insolvency, the stockholders, including the

---

[1] The docket title of this case is Hayden, Receiver, *v.* Williams.

defendants, have been assessed to the full amount of their respective holdings, but the money thus obtained, added to the amount realized from the assets, will not be sufficient even if all dividends paid during the bank's existence were repaid to the receiver, to pay seventy-five per cent of the claims of the bank's creditors.

This suit was brought to compel the repayment of certain dividends paid by the bank to the defendants on that part of the capital of the bank represented by their stock of the par value of $5000, on the ground alleged in the bill that each of said dividends was fraudulently declared and paid out of the capital of the bank, and not out of net profits.

A list of the dividends and the amount thereof paid by the bank from January, 1885, to July, 1892, both inclusive, is contained in the statement, and it is added that all dividends, except the last, (July 12, 1892,) were paid to the defendant Williams, a stockholder to the amount of $5000, from the organization of the bank. The last dividend was paid to the defendant Dodd, who bought Williams' stock, and had the same transferred to his own name December 16, 1891.

When the dividend of January 6, 1889, was declared and paid, and when each subsequent dividend, down to and including July, 1891, was declared and paid, there were no net profits. The capital of the bank was impaired and the dividends were paid out of the capital, but the bank was still solvent. When the dividends of January and July, 1892, were declared and paid there were no net profits, the capital of the bank was lost, and the bank actually insolvent.

The defendants, neither of whom was an officer or director, were ignorant of the financial condition of the bank, and received the dividends in good faith; relying on the officers of the bank, and believing the dividends were coming out of the profits.

Upon these facts the court desired the instruction of this court for the proper decision of the following questions:

First question. Can the receiver of a national bank recover a dividend paid not at all out of profits, but entirely out of the capital, when the stockholder receiving such dividend acted in good faith, believing the same to be paid out of the

profits, and when the bank, at the time such dividend was declared and paid, was not insolvent?

Second question. Has a United States Circuit Court jurisdiction to entertain a bill in equity, brought by a receiver of a national bank against stockholders to recover dividends which, as claimed, were improperly paid when such suit is brought against two or more stockholders and embraces two or more dividends, and when the objection, that there is an adequate remedy at law, is raised by the answer?

*Mr. Edward Winslow Paige* for appellant.

*Mr. Theodore De Witt* for appellees. *Mr. George G. De Witt* was on his brief.

Mr. Justice Peckham, after stating the facts, delivered the opinion of the court.

It will be noticed that the first question is based upon the facts that the bank, at the time the dividends were declared and paid, was solvent, and that the stockholders receiving the dividends acted in good faith and believed that the same were paid out of the profits made by the bank.

The sections of the Revised Statutes which are applicable to the questions involved herein are set forth in the margin.[1]

---

[1] Sec. 5199. The directors of any association may, semi-annually, declare a dividend of so much of the net profits of the association as they shall judge expedient; but each association shall, before the declaration of a dividend, carry one tenth part of its net profits of the preceding half year to its surplus fund until the same shall amount to twenty per centum of its capital stock.

Sec. 5204. No association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw, or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital. If losses have at any time been sustained by any such association, equal to or exceeding its undivided profits then on hand, no dividend shall be made; and no dividend shall ever be made by any association, while it continues its banking operations, to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts. All debts due to any associations, on which interest is past due and unpaid for a period

The complainant bases his right to recover in this suit upon the theory that the capital of the corporation was a trust fund for the payment of creditors entitled to a portion

---

of six months, unless the same are well secured, and in process of collection, shall be considered bad debts within the meaning of this section. But nothing in this section shall prevent the reduction of the capital stock of the association under section fifty-one hundred and forty-three.

SEC. 5205. (As amended by section 4 of the act approved June 30, 1876, 19 Stat. 63.) Every association which shall have failed to pay up its capital stock, as required by law, and every association whose capital stock shall have become impaired by losses or, otherwise, shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in the capital stock, by assessment upon the shareholders pro rata for the amount of capital stock held by each; and the Treasurer of the United States shall withhold the interest upon all bonds held by him in trust for any such association, upon notification from the Comptroller of the Currency, until otherwise notified by him. If any such association shall fail to pay up its capital stock, and shall refuse to go into liquidation, as provided by law, for three months after receiving notice from the Comptroller, a receiver may be appointed to close up the business of the association, according to the provisions of section fifty-two hundred and thirty-four: *And provided*, That if any shareholder or shareholders of such bank shall neglect or refuse, after three months' notice, to pay the assessment, as provided in this section, it shall be the duty of the board of directors to cause a sufficient amount of the capital stock of such shareholder or shareholders to be sold at public auction (after thirty days' notice shall be given by posting such notice of sale in the office of the bank, and by publishing such notice in a newspaper of the city or town in which the bank is located, or in a newspaper published nearest thereto,) to make good the deficiency, and the balance, if any, shall be returned to such delinquent shareholder or shareholders.

SEC. 5140. At least fifty per centum of the capital stock of every association shall be paid in before it shall be authorized to commence business; and the remainder of the capital stock of such association shall be paid in instalments of at least ten per centum each, on the whole amount of the capital, as frequently as one instalment at the end of each succeeding month from the time it shall be authorized by the Comptroller of the Currency to commence business; and the payment of each instalment shall be certified to the Comptroller, under oath, by the president or cashier of the association.

SEC. 5141. Whenever any shareholder, or his assignee, fails to pay any instalment on the stock when the same is required by the preceding section to be paid, the directors of such association may sell the stock of such delinquent shareholder at public auction, having given three weeks' previous notice thereof in a newspaper published and of general circula-

thereof, and having been paid in the way of dividends to the shareholders that portion can be recovered back in an action of this kind for the purpose of paying the debts of the corporation. He also bases his right to recover upon the terms of section 5204 of the Revised Statutes.

We think the theory of a trust fund has no application to a case of this kind. When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation. No general creditor has any lien upon the fund under such circumstances, and the right of the corporation to deal with its property is absolute so long as it does not violate its charter or the law applicable to such corporation.

In *Graham* v. *Railroad Company*, 102 U. S. 148, 161, it was said by Mr. Justice Bradley, in the course of his opinion, that "When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. And a court of equity, at the instance of the proper parties, will

---

tion in the city or county where the association is located, or if no newspaper is published in said city or county, then in a newspaper published nearest thereto, to any person who will pay the highest price therefor, to be not less than the amount due thereon, with the expenses of advertisement and sale; and the excess, if any, shall be paid to the delinquent shareholder. If no bidder can be found who will pay for such stock the amount due thereon to the association, and the cost of advertisement and sale, the amount previously paid shall be forfeited to the association, and such stock shall be sold as the directors may order, within six months from the time of such forfeiture, and if not sold it shall be cancelled and deducted from the capital stock of the association. If any such cancellation and reduction shall reduce the capital of the association below the minimum of capital required by law, the capital stock shall, within thirty days from the date of such cancellation, be increased to the required amount; in default of which a receiver may be appointed, according to the provisions of section fifty-two hundred and thirty-four, to close up the business of the association.

SEC. 5151. The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount vested in such shares. (The balance of this section is immaterial.)

then make those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his."

And in *Hollins* v. *Brierfield Coal & Iron Company*, 150 U. S. 371, 383, 385, it was stated by Mr. Justice Brewer, in delivering the opinion of the court, and speaking of the theory of the capital of a corporation being a trust fund, as follows:

"In other words, and that is the idea which underlies all these expressions in reference to 'trust' in connection with the property of a corporation, the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first, for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

And also:

"The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud, or, sometimes, even mere mismanagement in respect thereto; but, as between itself and its creditors, the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock

subscriptions, nor all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."

Other cases are cited in the opinion as holding the same doctrine.

In *Wabash &c. Railway Company* v. *Ham*, 114 U. S. 587, 594, Mr. Justice Gray, in delivering the opinion of the court, said:

"The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true, in the case of a corporation as in that of a natural person, that any conveyance of property of the debtor, without authority of law, and in fraud of existing creditors, is void as against them."

These cases, while not involving precisely the same question now before us, show there is no well-defined lien of creditors upon the capital of a corporation while the latter is a solvent and going concern, so as to permit creditors to question, at the time, the disposition of the property.

The bank being solvent, although it paid its dividends out of capital, did not pay them out of a trust fund. Upon the subsequent insolvency of the bank and the appointment of a receiver, an action could not be brought by the latter to recover the dividends thus paid on the theory that they were paid from a trust fund, and therefore were liable to be recovered back.

It is contended on the part of the complainant, however, that if the assets of the bank are impressed with a trust in favor of its creditors when it is insolvent, they must be impressed with the same trust when it is solvent; that the mere fact that the value of the assets of the corporation has sunk below the amount of its debts, although as yet unknown to anybody, cannot possibly make a new contract between the corporation and its creditors. In case of insolvency, however,

the recovery of the money paid in the ordinary way without condition is allowed, not on the ground of contract to repay, but because the money thus paid was in equity the money of the creditor; that it did not belong to the bank, and the bank in paying could bestow no title in the money it paid to one who did not receive it *bona fide* and for value. The assets of the bank while it is solvent may clearly not be impressed with a trust in favor of creditors, and yet that trust may be created by the very fact of the insolvency and the trust enforced by a receiver as the representative of all the creditors. But we do not wish to be understood as deciding that the doctrine of a trust fund does in truth extend to a shareholder receiving a dividend, in good faith believing it is paid out of profits, even though the bank at the time of the payment be in fact insolvent. That question is not herein presented to us, and we express no opinion in regard to it. We only say, that if such a dividend be recoverable, it would be on the principle of a trust fund.

Insolvency is a most important and material fact, not only with individuals but with corporations, and with the latter as with the former the mere fact of its existence may change radically and materially its rights and obligations. Where there is no statute providing what particular act shall be evidence of insolvency or bankruptcy, it may be and it sometimes is quite difficult to determine the fact of its existence at any particular period of time. Although no trust exists while the corporation is solvent, the fact which creates the trust is the insolvency, and when that fact is established at that instant the trust arises. To prove the instant of creation may be almost impossible, and yet its existence at some time may very easily be proved. What the precise nature and extent of the trust is, even in such case, may be somewhat difficult to accurately define, but it may be admitted in some form and to some extent to exist in a case of insolvency.

Hence it must be admitted that the law does create a distinction between solvency and insolvency, and that from the moment when the latter condition is established the legality of acts thereafter performed will be decided by very different

principles than in a case of solvency. And so of acts committed in contemplation of insolvency. The fact of insolvency must be proved in order to show the act was one committed in contemplation thereof.

Without reference to the statute, therefore, we think the right to recover the dividend paid while the bank was solvent would not exist.

But it is urged on the part of the complainant that section 5204 of the Revised Statutes makes the payment of a dividend out of capital illegal and *ultra vires* of the corporation, and that money thus paid remains the property of the corporation, and can be followed into the hands of any volunteer.

The section provides that "no association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw, or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital." What is meant by this language? Has a shareholder withdrawn or permitted to be withdrawn in the form of a dividend any portion of the capital of the bank when he has simply and in good faith received a dividend declared by a board of directors of which he was not a member, and which dividend he honestly supposed was declared only out of profits? Does he in such case within the meaning of the statute withdraw or permit to be withdrawn a portion of the capital? The law prohibits the making of a dividend by a national bank from its capital or to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts. The fact of the declaration of a dividend is in effect the assertion by the board of directors that the dividend is made out of profits. Believing that the dividend is thus made, the shareholder in good faith receives his portion of it. Can it be said that in thus doing he withdraws or permits to be withdrawn any portion of the capital of the corporation? We think he does not withdraw it by the mere reception of his proportionate part of the dividend. The withdrawal was initiated by the declaration of the dividend by the board of directors, and was consummated on their part when they permitted payment to be made in accordance with the declaration. We think this language

implies some positive or affirmative act on the part of the shareholder by which he knowingly withdraws the capital or some portion thereof, or with knowledge permits some act which results in the withdrawal, and which might not have been so withdrawn without his action. The permitting to be withdrawn cannot be founded upon the simple receipt of a dividend under the facts stated above.

One is not usually said to permit an act which he is wholly ignorant of, nor would he be said to consent to an act of the commission of which he had no knowledge. Ought it to be said that he withdraws or permits the withdrawal by ignorantly yet in entire good faith receiving his proportionate part of the dividend? Is each shareholder an absolute insurer that dividends are paid out of profits? Must he employ experts to examine the books of the bank previous to receiving each dividend? Few shareholders could make such examination themselves. The shareholder takes the fact that a dividend has been declared as an assurance that it was declared out of profits and not out of capital, because he knows that the statute prohibits any declaration of a dividend out of capital. Knowing that a dividend from capital would be illegal, he would receive the dividend as an assurance that the bank was in a prosperous condition and with unimpaired capital. Under such circumstances we cannot think that Congress intended by the use of the expression " withdraw or permit to be withdrawn, either in the form of dividends, or otherwise," any portion of its capital, to include the case of the passive receipt of a dividend by a shareholder in the *bona fide* belief that the dividend was paid out of profits, while the bank was in fact solvent. We think it would be an improper construction of the language of the statute to hold that it covers such a case.

We are strengthened in our views as to the proper construction of this act by reference to some of its other sections. The payment of the capital within a certain time is provided for by sections 5140 and 5141. Section 5151 provides for the individual responsibility of each shareholder to the extent of his stock at the par value thereof in addition to the amount invested therein. (These shareholders have already been assessed under

this section.)   And section 5205 provides for the case of a corporation whose capital shall have become impaired by losses *or otherwise*, and proceedings may be taken by the association against the shareholders for the payment of the deficiency in the capital within three months after receiving notice thereof from the Comptroller.  These various provisions of the statute impose a very severe liability upon the part of holders of national bank stock, and while such provisions are evidently imposed for the purpose of securing reasonable safety to those who deal with the banks, we may nevertheless say, in view of this whole system of liability, that it is unnecessary, and that it would be an unnatural construction of the language of section 5204 to hold that in a case such as this a shareholder, by the receipt of a dividend from a solvent bank, had withdrawn or permitted to be withdrawn any portion of its capital.

We may concede that the directors who declared the dividend under such circumstances violated the law, and that their act was therefore illegal, but the reception of the dividend by the shareholder in good faith, as mentioned in the question, was not a wrongful or designedly improper act.  Hence the liability of the shareholder should not be enlarged by reason of the conduct of the directors.  They may have rendered themselves liable to prosecution, but the liability of the shareholder is different in such a case, and the receipt of a dividend under the circumstances is different from an act which may be said to be generally illegal, such as the purchase of stock in one national bank by another national bank for an investment merely, which is never proper.  *Concord First National Bank* v. *Hawkins*, just decided, *ante*, 364.

The declaration and payment of a dividend is part of the course of business of these corporations.  It is the thing for which they are established, and its payment is looked for as the appropriate result of the business which has been done. The presumption of legality attaches to its declaration and payment, because declaring it, is to assert that it is payable out of the profits.  As the statute has provided a remedy under section 5205 for the impairment of the capital which includes the case of an impairment produced by the payment of a divi-

dend, we think the payment and receipt of a dividend under the circumstances detailed in the question certified do not permit of its recovery back by a receiver appointed upon the subsequent insolvency of the bank.

The facts in the various English cases cited by counsel for complainant are so entirely unlike those which exist in this case that no useful purpose would be subserved by a reference to them. Not one holds that a dividend declared under such facts as this case assumes can be recovered back in such an action as this.

We answer the first question in the negative. The second question relates to the jurisdiction of a court of equity over an action of this nature. It is evident that the question was propounded to meet the case of an affirmative answer to the first question.

In that event the second would require an answer. As we answer the first question in the negative, and the second question was scarcely touched upon in the argument, we think it unnecessary to answer it in order to enable the court below to proceed to judgment in the case.

*The first question will be certified in the negative.*

---

## KENTUCKY BANK TAX CASES.

There were twenty-six of these cases in all. Of these, five were decided on the 3d of April, 1899, and are reported in volume 173, U. S. Reports, viz.: CITIZENS' SAVINGS BANK OF OWENSBORO *v.* OWENSBORO, at page 636; DEPOSIT BANK OF OWENSBORO *v.* OWENSBORO, at page 662; DEPOSIT BANK OF OWENSBORO *v.* DAVIESS COUNTY, at page 663; FARMERS' AND TRADERS' BANK OF OWENSBORO *v.* OWENSBORO, at page 663; OWENSBORO NATIONAL BANK *v.* OWENSBORO, at page 664, five were affirmed May 15, 1899, by a divided court, viz.: No. 356, STONE *v.* BANK OF KENTUCKY; No. 357, LOUISVILLE *v.* BANK OF KENTUCKY; No. 360, STONE *v.* LOUISVILLE BANKING COMPANY; No. 361, LOUISVILLE *v.* LOUISVILLE BANKING COMPANY; No. 387,