Bromwell, J.
The petition on appeal in this ease is brief and is quoted in full, as follows:
"Plaintiff is the duly elected, qualified and acting trustee in bankruptcy of the Hartwell Furniture Company, a corporation organized under the laws of Ohio.
"The defendant, Clara B. Groff, was at the time hereinafter mentioned, the holder of ten (10) shares of the preferred stock of the said the Hartwell Furniture Co.
"On the 29th day of April, 1904, there was paid to said defendant, from the funds of said corporation, the sum of $17.50; on the 29th day of June, 1905, the sum of $17.50; on the 19th day of April, 1906, the sum of $17.50, and on the 7th day of August, 1907, the sum of $17.50, as dividends upon the ten (10) shares of stock held by said defendant as aforesaid. Neither upon said dates, or at any time during which defendant held-said shares of stock did the corporation have any surplus profits, as defined by law, subject to the payment of dividends, and said dividends were, therefore, illegal and void.
"Wherefore, plaintiff prays judgment against defendant in the sum of $70.00, with interest on $17.50 thereof from April 29, 1904; on $17.50 thereof from June 29, 1905; on $17.50 *149 thereof from April 19, 1906; and on $17.50 thereof from the 7th day of August, 1907, with interest at the rate of 6 per cent., and for his costs herein. ’ ’
To this the defendant filed the following answer:
“Now comes the defendant and for answer to .plaintiff’s petition admits that this case comes into this court on an appeal from the docket of John Marshall Smedes, a justice of the peace in and for Cincinnati township, Hamilton county, Ohio; admits that plaintiff is the duly qualified trustee in bankruptcy of the Hartwell Furniture Company, an Ohio corporation; admits that she was at the time mentioned in said petition the holder of ten shares of preferred stock of the Hartwell Furniture Company, which stock was fully paid and non-assessable; admits that she received, as dividends, the sums of money at or about the times specified in said petition, and that said dividends were not paid out of any surplus profits of the company.
“Further answering, defendant says that the Hartwell Furniture Company was for many years engaged in the manufacture and sale of furniture in the city of Cincinnati, and up to a short time before its failure was solvent, and at the times when said dividends were paid, other than the dividends paid in the year 1907, had assets more than sufficient to pay all of its debts and liabilities.
“Defendant states further that she received said dividends in good faith, and did not believe that said company at any time prior to its failure was without assets more than sufficient to pay all of said debts and liabilities.
“Wherefore, she prays to be hence dismissed with her costs herein expended.”
The following are the provisions of the statute in regard to dividends of Ohio corporations:
3269. “See. 1. [Corporate dividends to be paid from surplus profits only.] Be it enacted by the General Assembly of the State of Ohio, That it shall not be lawful for the directors of any corporation organized under the laws of this state to make dividends except from the surplus profits arising from the business of the corporation.
“Sec. 2. [Unpaid interest due corporation not to be included in profits.] In the calculation of the profits of any corporation previous to a dividend, interest then unpaid, although due, on debts owing to the company, shall not be included.
“Sec. 3. [Surplus profits; how ascertained; prohibiting advertisement of capital not subscribed and paid in.] In order *150 to .ascertain the surplus profits, from which alone a dividend can be made, there shall be charged in the account of profit and loss, and deducted from the actual profits:
“1. All the expenses paid or incurred, both ordinary and extraordinary, attending the management of the affairs and the transaction of the business of the corporation.
“2. Interest paid, or then due or accrued on debts owing by the corporation. '
‘ ‘ 3. All losses sustained by the corporation, and in the computation of such losses, all debts owing to the corporation shall be included which shall have remained due without prosecution, and no interest having been paid thereon for more than one year, or on which judgment shall have been recovered, and shall have remained for more than two years unsatisfied, and on which no interest shall have been paid during that period; and no such corporation shall advertise a larger amount of capital stock that has actually been subscribed and paid in; also, shall not .advertise a greater dividend than what has been actually earned and credited or paid to its stockholders or members.”
It would seem that the language of the statute is so plain that there could be no disagreement as to its meaning. It first limits the declaration of dividends to surplus profits; it then proceeds to state the manner of determining such surplus profits, using the significant language that from such profits alone dividends shall be made. It does not permit the declaration of dividends out of capital stock nor assets except as the latter may be an increment to the original capital.
The restriction upon the authority of directors to declare dividends out of surplus alone, even in the absence of a specific statute such as we have, is recognized by practically all of the text book writers upon corporations and stockholders, and is supported by numerous decisions in other states. Thus Cook on Stock and Stockholders, Section 546, uses this language:
“A dividend can lawfully be made only out of net profits! The payment of it must leave the capital stock of the company intact and unimpaired, or the dividend itself will be held fraudulent and void.”
This citation fairly represents the view of the authorities.
It is not intended, however, that all of the surplus profits of any year shall be distributed as dividends, that being a matter *151 of discretion with the directors, having full knowledge of the condition of the business and its future necessities, nor, on the other hand, are the directors prohibited from declaring dividends out of accumulative surplus profits of previous years, even where there have been no surplus profits for the particular year in which the dividend was declared or, as stated by the same author in the same section:
“Profits earned and accumulative in times of prosperity may properly be paid out as dividends subsequently at a time when no dividends have been earned.”
And again, in Section 547, we read:
“As already shown, a dividend can be lawfully declared only when sufficient net profits have been earned to pay that dividend. Accordingly a dividend paid wholly or partly from the capital stock is illegal and subjects the corporation and the shareholders who are parties to it to serious liability. It is the well determined doctrine of the courts of this country that capital stock is a trust fund to be jealously preserved intact for the benefit of corporate creditors. Hence the rule has been firmly established that, where dividends are paid in whole or in part out of the capital stock corporate creditors, being such when the dividend was declared, or becoming such at any subsequent time, may, to the extent of their claim,, compel the shareholders to whom the dividend has been paid to refund whatever portion of the dividend was taken out of the capital stock. In this country shareholders are bound to take notice of the true character and condition of the capital stock and they can not escape liability by reason of their ignorance. * * * If a dividend has been paid-out of the capital stock shareholders are conclusively presumed to have known it and are liable to an action for a re-payment. They can not claim to hold the position of innocent or tona fide holders.” Citing numerous authorities.)
To the same effect is the statement of Clark & Marshall on Corporations, Section 5285, page 1636:
“If the directors of a corporation declare and pay a dividend to its stockholders when there are no profits out of which a dividend may be lawfully declared, the stockholders have no right to retain ¡the money received by them, and it may be recovered from them by the corporation in an action for money had and received, or by an assignee in bankruptcy or receiver of the cor *152 poration, or in equity by creditors or a receiver, or dissenting stockholders. If a corporation refuses to sue to recover dividends paid out of the capital stock, a stockholder may file a bill to compel repayment.
‘ ‘ To sustain such a recovery there need not have been any bad faith or negligence in declaring the dividend. Nor need the stockholders have known .that the dividend was declared and paid illegally. However their intention may have been, they are not in a position of bona fide holders, for they are bound to know the condition of the corporation, or, rather, they are chargeable with knowledge of its condition.
“The fact that the statute makes directors individually liable to .a corporation or its creditors for wrongfully paying dividends when there are no profits available for the purpose does no,t affect the liability of the stockholders to repay dividends wrongfully received by them, and, notwithstanding’ such a statute, the liability of the stockholders may be enforced in equity by a receiver of a corporation.”
The last two paragraphs of the above citation bear directly on the allegation of good faith set up in the answer and upon the point made by argument that inasmuch as Section 3269-4, Be-vised Statutes, makes each director violating or concerned in violating the three previous sections, personally liable for any violation of said previous sections, the stockholders receiving such dividends in good faith and without knowledge of their illegality can not be required to return them.
The question of the knowledge of the stockholders as to the condition of insolvency of a corporation is disposed of by our own Supreme Court in the case of Barrick v. Gifford et al, 47 O. S., 186:
“Stockholders have the means of knowing the condition of their company much better than creditors, and if the company continues to do business upon an insolvent basis it should be regarded as permitted by the stockholders, as the directors and officers of the company derive their authority from and are the agents of the stockholders. ’ ’
It is a little remarkable that the exact question raised in this case does not seem to have been passed upon, so far as any of the printed reports show, by any Ohio court. In a recent case, DelaCroix v. Eid Concrete Co., 8 N.P.(N.S.), 496, decided by *153 Judge Gorman of our court, it is taken for granted that the dividends are payable only out of the surplus profits as defined by the statute, and in .the case of Meisse v. Loren, 4 N. P., 100, syllabus 3, we find the statement that:
“The doctrine that the capital stock and other property of the corporation is a trust fund for the payment of the debts of the corporation is followed by the American courts and the courts in Ohio.”
I have examined the cases cited by counsel for the defendant, viz., Miller v. Bradish, 69 Iowa, 278; Reid v. Eatonton Mfg. Co., 40 Ga., 103; McLean, Assignee, v. Eastman et al, 21 Hun., 312; McDonald v. Williams, 174 U. S., 397; and Lawrence v. Greenup, 97 Fed., 906, and do not believe that the decisions are applicable to the case before us, for the reason that they are based upon statutes not similar to those in Ohio. The Iowa statute, Section 1072, upon which the case of Miller v. Bradish was decided, reads as follows:
Sec. 1072. “The payment of dividends which leaves insufficient funds to meet the liabilities of the corporation, shall be deemed such fraud as will subject those concerned to the penalties of the preceding section; and such dividends, or their equivalent, in the hands of the individual stockholders, shall be subject to such liabilities.”
Construing the word liability as used in this statute the court said, in that ease (page 281) :
“We think that the capital stock in one sense is a liability of the corporation, and yet it is not adept # # the word ‘liability’ as used in the statute is synonymous with ‘indebtedness.’ ”,
The section referred to, 1072, which is now Section 1621, among other things provides that—
“If the directors or other officers or agents of any corporation shall declare or pay any dividend * * * which would diminish the amount of its capital stock, all directors, officers or agents knowingly consenting thereto shall be jointly and severally liable for all the debts of such corporation then existing, but dividends made in good faith before knowledge of the *154 occurring of losses shall not come within -the provisions of this section. ’ ’
Two things will be noticed in regard to .the last citation:
First. That it makes depreciation of the capital stock, by means of dividends declared therefrom, unlawful, and
Second. That it makes the directors liable only when they have knowledge of the fact that the dividend will cause an impairment.
In passing it may be noted that we have no such provision in our statute.
In the case of Reid et al v. Eatonton Mfg. Co. (supra), the court said:
“But we will not say that in a proper case, where the corporation is insolvent, and the capital stock, upon the faith of which the credit was given, has become insufficient for the payments of the debts of the company, the case might not be made where a court of equity would enjoin the payment of future dividends to the stockholders till the debts are paid. Nor do we question the right of creditors, in a court of equity to compel stockholders to refund dividends made to them out of the stock itself. The whole capital stock is a trust fund for the payment of the debts contracted on the faith of it, which the stockholders can not divert from that object by distributing it as dividends or otherwise dividing it among themselves.”
In the case of McDonald v. Williams, 174 U. S., 397, the decision was based upon Section 5204 of the United States Revised Statutes, and the two syllabi seem to be confined to the question of knowledge and good faith on the part of the stockholders in accepting illegal dividends. These syllabi are as follows:
“1. A receiver of a national bank can not recover back from the stockholder a dividend paid to him, not out of the profits, but entirely out of the capital, when such stockholder receiving such dividend acted in good faith, believing the same to be paid out of the profits made by the bank, and when the bank at the time such dividend was declared and paid was solvent.
“2. A stockholder by the mere reception of his proportionate part of such dividend does not withdraw any of the capital of the bank within the meaning of Sec. 5204, U. S. Rev. Stat.”
*155 But the court in its opinion, on page 404, somewhat impairs the force of syllabus 1 by saying:
"But we do not wish ito be understood as deciding that the doctrine of a trust fund does in truth extend to a shareholder receiving a dividend, in good faith believing it is paid out of profits, even though the bank, at the time of the payment, be in fact insolvent. That question is not herein presented to us and we express no opinion in regard to it. We only say that if such a dividend be recoverable it would be on the principle of a trust fund.”
The necessity of keeping the capital unimpaired is set out in Section 5205, U. S. Rev. Stat., which provides, among other things, that:
"Every association which shall have failed to pay up its capital stock as required by law and every association whose capital stock shall have become impaired by losses or otherwise, shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in its capital stock, by assessment among the shareholders pro rata for the amount -of capital stock held by each. ’ ’
And it was to this last named statute that the court referred, on page 407, as one of the- reasons for not requiring the individual stockholders to refund dividends to pay debts- when it said:
"As the statute has provided .the remedy under Section 5205 for the impairment of the capital, which includes the case of an impairment produced by the payment of a dividend, we think the payment and receipt of a dividend under the 'circumstances- detailed in the question certified, do not permit of its recovery back by a receiver appointed on the subsequent insolvency of the bank. ’ ’
The decision in the ease of Lawrence v. Greenup was based upon the same statute and does not seem to be applicable to the facts in this case.
The fact that the defendant is a preferred stockholder is immaterial, as the statute is not limited to dividends declared on the common stock, but refers to dividends of all kinds.
*156 In this connection see also Railroad Co. v. Smith et al, 48 O. S., 219.
A case not exactly similar to that which we are considering is Ohio College of Dental Surgery v. Rosenthal, 45 O. S., 183, which was an action to recover interest claimed to be due by the holder of a certificate in said college issued February 16, 1858, the language of the certificate being as follows:
“This is to certify that J. B. Smith, M. D., is entitled to one share of the real estate property of the college, drawing an interest of six per cent., and transferable only in accordance with the constitution of the College Association. ’ ’
The money received from the sale of these certificates was invested in real estate which was to be used in carrying out the purposes of the association. No interest had ever been paid on this certificate nor had the association made any profits. The court said, on page 193:
“The suggestion that these dentists while pretending to set on foot an enterprise for the maintenance of a college for instruction in the very important and useful science of dental surgery, were really concocting a scheme to constitute themselves pensioners or annuitants upon the college, and hence upon each other, to the extent of six dollars a year for each certificate, involves too grave a reflection upon either their good faith or their sanity to justify us in reaching such conclusion without, a clear expression of such a purpose. The improbability if not the absurdity of such a construction of these certificates will become apparent when we reflect that these pensions or annuities could only be paid out of the capital of the college. An attempt to enforce their collection would inevitably involve the entire enterprise in hopeless ruin.”
On page 194 the court says:
“That promises by a corporation to pay its members interest on their shares out of the capital are void, is abundantly established.” (Citing a number of authorities.)
Substituting the word “ dividend” in place of “interest” in these last citations we should have a case very similar to the one involved.
*157 The conclusion which I reach from .the authorities is:
First. That the capital stock must not be impaired by the declaration of dividends therefrom, but must be kept intact to meet the demands of creditors and for the management of the business.
Second. That if such capital stock is unimpaired, dividends may be declared within the discretion of the board of directors out of surplus profits, whether earned during the current year or carried over from any former year.
Third. That even if no surplus profits have been earned for any current year, dividends may be declared from the accumulated and undivided profits of any former year.
Fourth. That in the case at bar the various dividends alleged to have been paid to the defendant in this case were, as a matter of fact, paid out of the capital and not out of the surplus funds.
Having reached this conclusion, in my judgment the plaintiff; is entitled to have the demurrer to the answer sustained, and, in ease defendant does not desire to plead further, to have judgment entered accordingly.