HELVERING, Commissioner of Internal Revenue, v. WHEELING MOLD & FOUNDRY CO.

No. 3633.

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

M. H. Eustace, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

William M. Smith, of Washington, D. C., for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and PAUL, District Judge.

SOPER, Circuit Judge.

This case relates to the liability of Wheeling Mold & Foundry Company, a Delaware corporation, to pay the sum of $48,077.86 for income and excess profits taxes for the year 1919 assessed against a West Virginia corporation of the same name. The Delaware corporation was organized on September 30, 1919, for the purpose of taking over the assets and business of the West Virginia corporation, and the latter was dissolved on May 22, 1920. The transfer was made as of October 1, 1919, in accordance with a written contract of October 7, 1919, under which a sale of the assets was made by the West Virginia corporation, as vendor, to the Delaware corporation, as vendee. The contract recited that the vendor had, for some time past, been carrying on the business of manufacture of steel and iron products at Wheeling, W. Va., and that the Delaware corporation, as vendee, had been organized with a capital of $1,200,000 preferred stock, divided into 12,000 shares, of the par value of $100 each, and 50,000 shares of common stock without par value. Under the agreement, all of the property and assets of the vendor, as a going concern, were sold to the vendee in consideration of (1) all the preferred stock and 10,000 shares of the common stock of the vendee; (2) the sum of $1,600,000, consisting of $1,300,000 in cash and a note of the vendee for $300,000, payable on demand with interest at 6 per cent. per annum; and (3) as the balance of the consideration, the vendee agreed to carry out all the pending contracts of the vendor and "to undertake to pay, satisfy and discharge all the lawful debts of the vendor, including the reasonable expense of the vendor incurred and to be incurred in connection with the pending reorganization." The assets transferred were carried on the books of the West Virginia corporation and set up in the books of the Delaware corporation at the gross value of $3,859,693.91. The liabilities shown by the books of the West Virginia corporation were in the sum of $1,009,693.91, and this sum did not include any liability for the federal income tax for the year 1919 which had not then accrued. The value of the 12,000 shares of preferred stock of the Delaware corporation was $1,021,308, and the value of the 10,000 shares of common stock transferred was $10,000. These assets, together with the cash and the promissory note of the vendee, were immediately distributed to the stockholders of the vendor in liquidation of their shares of stock therein.

On October 7, 1919, when the contract was signed and the transfer was made, the same individuals were president and secretary-treasurer, respectively, of both corporations, and three of the eleven directors of the old corporation became members of a board of nine directors of the new.

Upon this state of facts, the Board of Tax Appeals held that the Delaware corporation was not liable as a transferee under section 280 (a) (1) of the Revenue Act of 1926,[1] 44 Stat. 9, 61, 26 USCA § 1069 (a) (1), for the income taxes imposed for the year 1919 upon the West Virginia corporation. This section contemplates the collection from the transferee of a taxpayer's property of the tax imposed upon the taxpayer by any prior income, excess profits or war

---

[1] "Sec. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act."

profits tax act when the liability of the transferee to pay the same arises, either at law or in equity. The Board held that the vendee in this case was not liable at law for the taxes under the contract to pay the lawful debts of the transferor, because a tax is not a debt in the ordinary sense; and the Board also held that the vendee was not liable in equity because there was no intent to defraud the creditors, and the vendor received in the transaction, amongst other things, $1,-300,000 in cash, a sum exceeding all of its liabilities, and was therefore not insolvent; and hence its assets did not become a trust fund for the benefit of the creditors, under such cases as McDonald v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022; Fogg v. Blair, 133 U. S. 534, 10 S. Ct. 338, 33 L. Ed. 721. The Commissioner of Internal Revenue brings the case here by a petition to review the conclusions of the Board.

It will have been noticed that the old corporation received for distribution amongst its stockholders all of the preferred stock of the new, valued at the sum of $1,021,308, and also 10,000 out of 50,000 shares of common stock valued at $1 per share. The record does not show whether or not the preferred stock had voting power; but even if the stockholders of the old corporation lost voting control of the enterprise, they owned a very large majority of the beneficial interest therein. Moreover, all of the assets received in consideration of the transfer, including $1,300,000 in cash, and the shares of stock, were immediately distributed amongst them, and it is a fair inference that this action was known to and contemplated by both of the parties to the contract of sale, in view of the substantial similarity of the stock interest in the two companies, and the further fact that the executive officers of both corporations were the same. The result was that the old company was knowingly stripped of all of its assets and left without any means of paying the income taxes to the United States which were bound to accrue. If it was the intention of the parties to distribute the assets of the old corporation amongst its stockholders and to make no provision for the discharge of its obligations to the government either by the vendee or any other person, it would be difficult to conclude that the transaction was free from fraud, or that the government was without power to enforce against the transferee and the property in its hands the tax liability of the transferor. The case would differ from those in which the transfer being free from fraudulent intent and the transferor receiving means to respond to its obligations, it is held that no liability upon the transferee to discharge those obligations can arise. See West Texas Refining & D. Co. v. Commissioner (C. C. A.) 68 F.(2d) 77.

However, we do not so interpret the contract between the parties, for we think that the agreement of the vendee to pay the lawful debts of the taxpayer was broad enough to include the assessment against it for income taxes. It is true that a tax is not a debt in the ordinary sense of the word resting upon a contract, express or implied, but a burden imposed by the government in the exercise of its power to raise money for public purposes. Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101; Meriwether v. Garrett, 102 U. S. 472, 513, 26 L. Ed. 197. Nevertheless, a tax may be considered a debt within the meaning of a statute, if the legislative intent can be plainly inferred. Thus it was held in Price v. U. S. 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373, that the word "debts" includes taxes in R. S. § 3466 (31 USCA § 191), which provides that whenever any person indebted to the United States is insolvent, or the estate of a deceased debtor is insufficient to pay all the debts due by the deceased, the debts due the United States shall be first satisfied; and it was pointed out that in the absence of another remedy made exclusive, an action of debt lies to recover taxes where the amount due is certain or may be made certain. It was thought that the purpose of the statute should not be defeated by unnecessarily restricting the application of the word within a narrow or technical meaning, as was done under different circumstances in the cases cited.

Similarly, in construing the contract of sale in this case, the word "debts" should be given such a meaning as will carry out the purpose of the parties to transfer to the new corporation all of the assets and all of the liabilities of the old, and to make a distribution to the stockholders that would be free from attack. This could not be done unless provision was made not only for ordinary creditors but for the obligations of the government later to accrue, and hence it is far more reasonable to suppose that the parties intended to use the word "debts" in the broad, rather than in the narrow and technical sense. We find that a like conclusion was reached in Tevander v. Ruysdael (C. C. A.) 299 F. 746, 753, where the court construed a decree and order of judicial sale which provided that at the sale the purchaser should assume all existing debts against the business. It was concluded that the word "debts" was

intended to include income taxes. The court said:

"The word 'debt,' in its technical meaning as applied to common-law actions, is not synonymous with the word 'tax.' Lane County v. Oregon, 74 U. S. (7 Wall.) 71, 19 L. Ed. 101. But the word 'debt' is not always used with this limited technical meaning. A 'tax' may or may not be a debt under a particular statute, according to the sense in which the word is found to be used. U. S. v. Chamberlin, 219 U. S. 254, 31 S. Ct. 155, 55 L. Ed. 204. The word 'debt' is frequently used in its well-recognized sense as that which is due from one person to another; that which one person is bound to pay another; a thing owing; an obligation; a liability. The character of a tax is well known. It is a charge or burden laid upon persons or property for public purposes; a forced contribution authoritatively imposed. When it is imposed annually—that is, when the law provides for its imposition—it is, before its due date, a liability in futuro, imposed by law, and when finally imposed it becomes a fixed liability, a thing owing, a matured obligation.

"It is apparent from the language used that the parties intended that the purchaser should assume all obligations or liabilities of the business. The parties knew that the law imposes income taxes. All parties knew that at the time of the sale the income taxes were liabilities in futuro; that they would become, when imposed, a fixed liability, a thing owing to the government. The purchaser, therefore, by assuming the debts of the business, included income taxes of the business."

The provision in the contract in the pending case was made for the benefit of the government as well as all other creditors, and the government has the right to enforce it against the Delaware corporation as a transferee within the meaning of section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note), without first attempting to collect the tax from the transferor or its stockholders. American Equitable Ass'n v. Helvering (C. C. A.) 68 F.(2d) 46.

We have not overlooked the suggestion in the opinion of the Board that, in the stipulation of facts, the sum of $1,009,693.91 is stated to be the amount of liabilities of the West Virginia corporation which the Delaware corporation assumed; but it is obvious that this statement refers to the amount of liability shown by the books of the West Virginia corporation at the time the transfer of October 7, 1919, took place, and before the income tax had accrued. Reference is also made in the opinion of the Board to a resolution of the West Virginia corporation, passed in April, 1920, wherein its Board of Directors was directed to convert its property into cash and pay off all debts and obligations, and divide the remainder among the stockholders pro rata after publication of the resolution in a newspaper of general circulation. This resolution was doubtless passed as part of the formal proceedings of dissolution. It did not correctly recite the facts, for at that time the corporation, having already made the distribution to its stockholders, had no assets out of which its obligations could be paid.

The finding and conclusions of the Board of Tax Appeals are reversed.