## De Peyster vs. The American Fire Insurance Company and others.

A creditor of an insolvent corporation, whose debt accrued by reason of a loan to the company to pay a loss which had occurred previous to the calamity which rendered the company insolvent, is not entitled to a preference in payment out of the funds which the company held beyond their capital stock at the time of such calamity.

No creditor of an insolvent corporation is entitled to a preference in payment, unless he has a prior legal or equitable lien on or a specific appropriation of some particular part of the corporate property or funds.

The creditors of an insolvent insurance company are not limited in their claims against the company to the amount of the capital stock of the corporation at the time when their several losses occurred ; but they are entitled to be paid out of any funds of the company not otherwise specifically appropriated.

The capital stock of an insurance company is not the primary fund for the payment of losses which may accrue upon property insured. The premiums received for insurance, and the interest on the capital stock, constitute the primary and natural fund for the payment of the debts and losses of the company ; and the capital stock can only be resorted to when this primary fund is found to be insufficient.

The unearned premiums received by an insurance company on which the risks are still running are not surplus profits of the company, out of which dividends can be legally made among the stockholders, without leaving a sufficient surplus on hand to meet the probable losses upon risks then assumed and not yet terminated, independent of the capital stock of the corporation.

May 25.

This was an appeal from a decree of the vice chancellor of the first circuit dismissing the complainant's bill. Previous to the great fire in New-York, by which the American Fire Insurance Company lost its whole capital and was rendered insolvent, the complainant loaned to the company, for the purpose of paying a loss which had occurred, $2000, which amount the company agreed to repay to the complainant with interest, on demand. And as the company had a surplus on hand, in addition to its capital, of about $6000 at the time of the fire, the complainant claimed a preference in payment to the full amount of his debt out of this surplus fund. He therefore brought his action against the company, and having obtained judgment for the amount

and issued an execution thereon, which was returned unsatisfied, he filed his bill in this cause against the corporation and the receivers appointed under the act of January, 1836, for the purpose of obtaining such preference in payment out of the assets of the company in the hands of the receivers. The vice chancellor decided against the claim; from which decree the complainant appealed.

1837.<br>De Peyster<br>v.<br>The American<br>Fire Ins. Co.

*John Anthon*, for the appellant.

*J. I. Rosevelt*, for the respondents.

THE CHANCELLOR. There is no legal or equitable foundation for the claim of preference in payment which the complainant is attempting to establish in this case. Although the assets of the company are in the nature of a trust fund for the payment of the debts due to the creditors of the corporation, no one of those creditors is entitled to any preference in payment over another, unless he has obtained a specific appropriation of or prior equitable lien upon some particular part of the fund. In this case it is not pretended that the identical $2000 which the complainant loaned to the company did in fact constitute any part of the assets of the company which remained on hand at the time the insolvency occurred, and which have gone into the hands of the receivers. On the contrary it appears that the money was loaned to pay off a loss which had previously taken place; and was undoubtedly applied for that object. The complainant, therefore, was a mere creditor at large at the time of the appointment of the receivers, without any specific lien whatever. His claim then appears to be based entirely upon the erroneous supposition that the creditors who became such by reason of the destruction of their property by the fire have no claim upon the assets of the company beyond the amount of the capital stock; and that as the money loaned went to pay off a previous loss which must otherwise have been paid out of the surplus on hand at the time of the fire, the lender is entitled to a preference in payment out of such surplus. The capital stock, however,

is not the primary or natural fund for the payment of losses which may happen by the destruction of property insured by the company. The charters of all these companies contemplate the capital stock merely as a collatteral security for the payment of extraordinary losses, and only to be resorted to when the primary fund for the payment of the debts of the company shall prove insufficient. The premiums received and the interest of the capital stock, which constitute what is called the surplus fund of the company, is the primary and natural fund out of which losses should be paid ; and the residue only of such premiums and interest, after providing for the payment of all such losses and debts, should be divided among the stockholders. The directors are only authorized to declare dividends of the surplus profits. And unearned premiums on which the risks assumed by the company are still running, although they are surplus funds beyond the capital, are not *surplus profits* which can be legally divided among the stockholders, without leaving a sufficient surplus on hand to meet the probable losses which may accrue, instead of breaking in upon the capital of the company. The corporation should, therefore, at all times keep on hand, or properly invested, a surplus fund sufficient to meet the probable losses upon risks then assumed by the company and which have not yet terminated. And upon that fund, which I presume is the only one which existed in this case beyond the capital, the assured whose premiums have helped to constitute the fund have certainly an equal claim with any other creditors of the corporation.

The decision of the vice chancellor was unquestionably right, and it must be affirmed with costs.