## CRAWFORD, trustee, *v.* RONEY.

1. In a suit by a corporation against a stockholder for an unpaid subscription to stock, proof of the subscription and of a call duly made makes a prima facie case for the recovery of the amount embraced in the call.
2. The trustee in bankruptcy of the corporation having brought suit on a stock subscription, the evidence made out a prima facie case, unless payment had been made by reason of certain declarations of dividends under which entries of credits to the subscriber had been made.
3. If a corporation purchases its own shares which are not fully paid up, it can not charge the other shareholders with individual liability for the unpaid portion of such subscriptions, unless they, upon a sufficient consideration, expressly or impliedly promise to pay the same.
4. The evidence in this case was sufficient to require the judge to submit to the jury the question whether or not the defendant had become so bound.
5. The general rule is that dividends on corporate stock can only be declared and paid out of net profits.
6. If the stockholders of a corporation were indebted to it on account of their original subscriptions, or on account of additional stock purchased from the company, and if, while the corporation was insolvent, such stockholders, by resolutions, declared dividends, on the basis of assets which were not profits, though so called in the proceedings, and caused to be entered on the corporate books the amounts so declared as dividends, to the credit of the stockholders respectively, and thus sought to discharge in large part their liability on account of such stock, such attempted reduction of liability was not valid as against creditors of the corporation or a trustee in bankruptcy appointed for it.

Argued November 30, 1907.—Decided April 15, 1908.

Complaint.   Before Judge Hammond.   Richmond superior court. July 5, 1907.

T. C. Crawford, trustee in bankruptcy of the Augusta Debenture Company, Limited, brought suit against Henry C. Roney, alleging, in brief, as follows: The company is a domestic corporation. It was duly adjudged a bankrupt, and the plaintiff was elected and qualified as trustee. On October 20, 1898, the defendant, in company with nineteen other subscribers, signed an in-

strument reading as follows: "We, the undersigned, desiring to become stockholders in the Augusta Debenture Company, Limited, do hereby subscribe to the capital stock of said company the amounts opposite our names, and agree to pay said amount subscribed when called for by the board of directors of said company." The defendant subscribed for ten shares, of the par value of $100 each. The company was organized on the faith of such subscriptions, and continued in business until 1904. The defendant became liable on his subscription, in the sum of $1,000, of which he has only paid $100, leaving $900 still due. The company is insolvent, and it is necessary to collect all the unpaid stock subscriptions, and it is the duty of the plaintiff to do so. He has demanded of the defendant the balance of $900, which has been refused. On several dates mentioned, the company bought the stock of certain stockholders. The remaining stockholders, including the defendant, agreed to purchase from the company the shares of stock thus bought by it, and hence the defendant became liable for his proportionate part of the amount due, on account thereof. Demand has been made for the amount so due, and payment has been refused. Judgment was prayed against the defendant for $1,718.18, besides interest.

The defendant admitted that he subscribed for stock to the amount of $1,000, but alleged that this sum had been fully paid. He denied all liability on account of the purchase of shares by the company. By an amendment to his answer, he admitted that there remained due upon his subscription to the capital stock of the company the sum of $56.32, and pleaded tender of that amount. After the evidence for the plaintiff was closed, the court, on motion of the defendant, directed a verdict in favor of the plaintiff against the defendant for the amount thus conceded by the latter to be due. A motion for a new trial was made by the plaintiff; it was overruled, and he excepted.

*William H. Barrett,* for plaintiff.

*Joseph B. Cumming* and *C. H. & R. S. Cohen,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

The plaintiff's suit was based on two grounds: (1) that the defendant had subscribed for stock amounting to $1,000, had only paid $100, and was still due $900; (2) that the company bought from certain stockholders their shares of stock, and the remaining

stockholders, including defendant, agreed to purchase these shares, and that he owed for his proportionate part of the amount due on account of such purchase. The court directed a verdict for the plaintiff, for $56.32, the amount admitted to be due by the defendant.

The case was tried before, and the same verdict was directed. The judgment was reversed. 126 Ga. 763 (55 S. E. 499). Two points then decided are material to be mentioned here: first, that "in a suit by a corporation against a stockholder for an unpaid subscription to stock, proof of the subscription and of a call duly made makes a prima facie case for the recovery of the amount embraced in the call;" and second, that "a corporation purchasing its own shares which are not fully paid can not charge the shareholders with individual liability for the unpaid portion of the subscriptions, unless they, upon a sufficient consideration, expressly or impliedly promise to pay the same." In the opinion Mr. Justice Atkinson expressed the view that the evidence then before the court, including some which was excluded by the trial judge, did not show affirmatively that the defendant had become bound on the subscription for the shares purchased by the company. On the second trial the evidence produced on the first trial was introduced, and also additional evidence for the plaintiff. The defendant introduced no evidence.

As to the original subscriptions of the stockholders and the calls made in regard to them, there was no conflict; and the defendant was clearly liable for what had not been paid in by him, unless this debt had been discharged by reason of certain declarations of dividends which had been credited to him by the company. The legality of such declarations of dividends was denied by the plaintiff, who therefore contended that they did not operate as a discharge of the liability. On the subject of the stock alleged to have been bought by the company and taken over by the other stockholders, including the defendant, there was evidence of a by-law which provided that transfers of capital stock could be made only to the company, at a price not exceeding the amount which had actually been paid in by the stockholders, and that all stock purchased by the company should be divided proportionately among the remaining stockholders. An amendment was made to this by-law as it originally stood, at a meeting of the stockholders,

where the defendant was present and seconded the motion for the change, by which the board of directors were to approve the transfer to the company; but the provision in regard to dividing such stock among the remaining stockholders was repeated in the amendment. There was also evidence on the books tending to show, that the defendant and others gave a note for the amount of stock so received, and that it was destroyed after the declaration of the last dividend; that there were entries of charges of interest against him; that the minutes showed that he was present at the stockholders meeting in 1900, representing more than the shares originally subscribed for by him; and that after crediting to him the amount of declared dividends applicable to the shares of stock held by him, he gave his note for $56.32, as being the balance still due to the company. It will thus be seen that there was sufficient evidence to have submitted to the jury the question of whether the defendant was not bound by an express or implied promise on account of shares purchased by the company and redistributed, and if so, whether any such indebtedness had been discharged by dividends declared. The books showed, apparently without controversy, that there had been declarations of dividends. sufficient to reduce the entire amount due by the defendant to the balance conceded by him, if such declarations of dividends were legal and valid. The plaintiff contends that they were not so, because made while the company was insolvent.

The general rule is that dividends can only be declared and paid out of net profits. In 1 Morawetz on Private Corporations (2d ed.), §438, the rule is thus stated: "The right to declare a dividend depends upon the state of the company's finances at the time when the dividend is declared. The question usually is, whether or not there would remain a net increase upon the original investment, after deducting from the assets of the company all present debts and making provision for future or contingent claims." In section 439 it is said: "Future contingent claims against a corporation must be reduced to their present value, in order to determine the net gain upon the capital invested. Hence, it is the duty of the directors of an insurance company to reserve at all times a sufficient fund, in addition to the capital stock, to meet probable losses on risks assumed by the company." See also 2 Thompson on Corporations, §2152; 2 Morawetz on Private Corp.

(2d ed.) §838; 2 Beach on Private Corp. §601; 9 Am. & Eng. Enc. Law (2d ed.), 701; 10 Cyc. 463, 465, 549; *Reid* v. *Eatonton Mfg. Co.,* 40 *Ga.* 98 (2 Am. R. 563); Barry *v.* Merchants' Exchange Co., 1 Sandford's Ch. 307; St. John *v.* Erie Ry. Co., 22 Wall. 136 (22 U. S. (L. ed.) 743); Hubbard *v.* Weare, 79 Iowa, 678 (44 N. W. 915). The case of McDonald *v.* Williams, 174 U. S. 397 (19 Sup. Ct. 743, 43 L. ed. 1022), seems not to apply the trust-fund doctrine as far as many other cases. If part of what is there said in the opinion would be followed in this State, in the light of our statute cited below, the case decided differed widely from the present one. There the corporation was solvent when the dividend was declared; here it is insisted, and sought to be proved, that the corporation involved was insolvent. There the dividend declared was paid out, and afterward sought to be recovered. Here there was no actual payment, but it was sought to cancel or nearly cancel the indebtedness of stockholders by crediting against it the amounts of dividends which are alleged to have been illegally declared. The stockholders, instead of the directors, declared dividends, and thus sought to cancel almost entirely their own indebtedness, by such acts, which are attacked as illegal. The defendant was both a director and a stockholder. See *Lowry Banking Co.* v. *Empire Lumber Co.,* 91 *Ga.* 624 (17 S. E. 968); *Allen* v. *Grant,* 122 *Ga.* 552 (50 S. E. 494).

In this State there is a prohibition against declaring any dividend or distributing any money among the members of a corporation as profits, when such dividend, or money, is not declared or distributed from the net earnings of its investments, and in any manner increases its debts. Penal Code, §681; Acts 1902, p. 58.

It is contended by the defendant that there was no evidence of insolvency on the part of the company, when the dividends were declared. Its business was to issue and sell certificates or debentures. Those first issued were known as belonging to class "A." Each declared that, "In consideration of the application for this debenture, and the advance payment of two dollars, and the payment of a monthly instalment of one dollar, to be made between the first and the tenth day of each calendar month after date until sixty consecutive payments shall have been made," the company guaranteed to pay to the holder $100, upon the surrender and delivery of the debenture, subject to the terms and conditions of

the certificate. It was declared that the debenture was eligible to redemption after six consecutive monthly instalments had been paid. The following clause was also contained in each debenture: "To enable the Company to redeem their debentures rapidly, sixty per cent. or three fifths shall be taken each month from each and every monthly instalment received hereon and placed in the redemption fund for the purpose of redeeming debentures, and just as many debentures shall be redeemed the current month as that fund will pay in accordance with the schedule of values printed on the back hereof for the month in which it is redeemed. It is further agreed, that twenty per cent. shall be taken each month from each and every instalment and placed in the reserve fund to be invested in approved securities for the protection of the investor as well as to the end of securing payment of all debentures running to maturity. The remaining twenty per cent. of each monthly instalment to be used by the Company to defray expense of management." Provision was made for forfeiture of all payments previously made, in case of failure to make the monthly payments as required, but with a right of reinstatement within thirty days, upon payment of a fee of twenty-five cents on each debenture, in addition to the regular instalments due and unpaid. It was provided that holders of debentures upon which seven or more monthly instalments had been paid might secure loans from the company, or might surrender their debentures and receive from the company the cash surrender value of fifty per cent. of the amount paid in monthly instalments. It was further declared that, in case of death, debentures in good standing might be immediately surrendered, and the company would pay to the legal representative of the deceased their then present value. Another class of debentures was issued, known by the letter "B," which increased the amount of the monthly instalments to $1.50, the number of instalments to 84, and the amount agreed to be paid at maturity to $200, and also made some changes in the amounts to be carried to the respective funds; but they need not be set out at length. There was evidence showing the amount which had been paid in by holders of debentures in each year, and the assets; and tending to show that the amounts paid in, if treated as a liability, after the bankruptcy of the company, exceeded the assets. In the argument it was sought to analogize this company to a life-in-

surance company, whose liability was not fixed until the death of the insured. If the analogy is sound, the rule requiring insurance companies to keep a reserve, in addition to the capital stock, to meet probable losses or risks assumed, has been stated above: Scott *v.* Eagle Fire Co., 7 Paige, 198; De Peyster *v.* American Fire Ins. Co., 6 Paige, 486; Lexington Life, Fire, and Marine Ins. Co. *v.* Page, 17 B. Mon. 412 (66 Am. D. 165).

A consideration of the form of debenture described above will show the improbability, if not impossibility, of paying all debentures thus issued. It appears that the first payment of $2 went to the agent. The holder then agreed to pay $1 per month for sixty months, at the end of which time he was to receive $100. From each $1 thus received by the company monthly, 60 per cent. or three fifths was placed in the redemption fund and used to redeem certificates. Of the remaining 40 per cent. one half was carried to the reserve fund, and one half to the expense fund. If all of the 20 per cent. carried to the expense fund were found necessary to be used for that purpose, there would only remain 20 per cent. of the instalments, or $12 in the aggregate (aside from possible lapses), for the purpose of earning and paying the $100 promised if the certificate holder carried his contract until maturity. It is not necessary to discuss the modifications made in regard to amounts, etc. From the books of the company it appeared that those whose certificates were redeemed received more than the amount of their instalments paid in. The business which appears from the evidence to have been conducted by this company was to sell its own debentures. A debenture is a writing acknowledging a debt. So that the fundamental principle of this company—the sine qua non of its conducting business at all—was to go in debt by sales of its own debentures or promises to pay. Its creditors, called purchasers, paid in money to it in monthly instalments, and it agreed to repay in large sums, with certain terms and conditions in the contract, including one for lapses. To increase its business it was necessary to enlarge its indebtedness by selling more certificates. The evidence does not disclose that the company had any considerable property except what it thus collected. There were only twenty subscribers to stock originally, who paid in ten per cent. of their subscription (though there is some intimation in the evidence that even the first payment was

given back as a dividend). After some five or six years of activity, a trustee in bankruptcy was appointed, and brought suit against the stockholders for the unpaid subscriptions. It seems clear to us that there was sufficient evidence to have submitted to the jury the question of whether the company was insolvent at the time of the declaration of some or all of the dividends, by virtue of which declarations entered on the books it was sought to relieve the stockholders from further payments, and to treat their indebtedness as discharged, except as to a small balance.

The provision in the certificate, in the words "the remaining 20 per cent. of each monthly instalment to be used by the company to defray expenses of management," together with the application, gave the company the right to use that amount for expenses of management which might be incurred; but if the amount thus allowed was not so used, the balance remained as a part of the assets of the company, and did not ipso facto become profits for distribution among the stockholders. Such balance could be considered, with the other funds of the company, in determining whether there was a legitimate profit for distribution, but it did not constitute profits merely because not used in paying expenses.

There were also indications that certain other receipts from lapses, interest, and transfer fees were added to the 20 per cent. known as the expense fund, in arriving at what was distributed as profits.

We do not decide the issues of fact; but we have felt it necessary to show that there was ample evidence to have submitted the case to the jury, and that the presiding judge erred in directing a verdict for the amount conceded to be due by the defendant.

It was suggested, in the brief, that the suit was for an unpaid stock subscription and an amount due on account of stock transferred, and that the evidence tended to establish a case for the recovery from a stockholder of dividends alleged to have been illegally declared and paid. The plaintiff showed a subscription and a call. As to another part of the stock, he sought to show by the books the liability of the defendant. Perhaps he might have stopped when he made a prima facie case, put the defendant on proof of payment, and, if it was sought to show such payment by resolutions declaring dividends, he could then have responded by attacking the legality of such declarations. The entries by which

he sought to prove liability as to a part of the stock were so com-- mingled with the entries touching the dividends that he put in all the evidence at once, and in effect showed his adversary's defense and attacked it at the same time. No objection was made to the introduction of the evidence as going beyond the pleadings, if such objection would have been good, which we do not decide. The argument in the brief of counsel for defendant in error on this subject does not show that an affirmance was required. Illegality in the contract was suggested in argument as possible, but there was no such plea, nor does it appear that the trial court passed on any such point.

*Judgment reversed. All the Justices concur.*