# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1910.

---

### RONEY *v.* CRAWFORD, trustee; and *vice versa.*

1. In a suit by a trustee in bankruptcy of a corporation, to recover of a subscriber to the capital stock the balance due on his subscription contract, the subscriber is not entitled to a credit of dividends unless such dividends had been earned by the corporation when declared. The instructions of the court on this subject were in accord with the principles enunciated in this case when before this court on a former occasion.
2. The bankrupt corporation was a debenture company, and its creditors were those who had purchased its certificates. The defendant pleaded, in bar of the suit to recover an unpaid stock subscription, that the business of the debenture company was a lottery forbidden by law, and that its debenture holders were in pari delicto, and the suit could not be maintained for their benefit by the trustee in bankruptcy. *Held:* The lottery statutes (Penal Code, §§ 406-408) make penal the selling of lottery tickets, and not their purchase. Assuming the business of the debenture company to come within the operation of the lottery statutes, yet, under the allegations of the plea and the evidence, the investors in the certificates, who did not participate in the management and operation of the company, would not be in pari delicto with the company so as to defeat a recovery of money invested in the enterprise.

AUGUST 10, 1910.

Complaint. Before Judge Hammond. Richmond superior court. July 22, 1909.

*Joseph B. Cumming* and *C. H. & R. S. Cohen,* for·plaintiff in error. *William H. Barrett,* contra.

EVANS, P. J. The action is by T. C. Crawford, trustee in bankruptcy of the Augusta Debenture Company Limited, against H. C. Roney, to recover a balance due on a stock subscription. The case

has been twice before considered by this court. 126 *Ga.* 763 (55 S. E. 499) ; 130 *Ga.* 515 (61 S. E. 117). In the former trials the defendant contended that the company had earned and declared dividends on his stock sufficient to discharge all liability on his subscription contract, except the sum of $56.32, which he offered to pay. At the last trial the defendant amended his plea by alleging, that the business engaged in by the debenture company was a lottery scheme, calculated to defraud, contrary to public policy, and prohibited under the laws of the State; that the company issued certain debenture certificates of the forms attached to the plea, and when the company failed there were no creditors other than holders of debentures; and that the suit is proceeding solely in the interest of such debenture holders. The court refused to strike this amendment on demurrer, and submitted this phase of the case on the theory that if the business of the debenture company was that of a lottery the debenture holders were in pari delicto. Exceptions are taken to his instructions and refusals to charge on this subject. The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, which being refused, he brings error.

1. The court instructed the jury, that the defendant would not be entitled to the stock-dividend credit unless the dividend had been actually earned at the time it was declared, and that dividends on corporate stock can only be declared and paid out of net profits; and refused to instruct them that if the dividend was declared by the directors in good faith and received by the stockholders in the belief that the same had been paid out of the profits, the defendant would be entitled to a credit for such dividend upon his stock subscription, even though such dividend was paid out of the capital stock. The charge of the court was in accord with the principles enunciated in the case in 130 *Ga.* 515. In that report the evidence submitted by the plaintiff to show that the dividend claimed by the subscriber had not been actually earned was examined and held sufficient to carry the case to the jury on that issue. The same evidence was produced upon the second trial, and is sufficient to sustain the finding of the jury, which was adverse to the defendant.

2. According to the averments of the amended plea, it is contended that the present suit is an effort to collect assets of a bankrupt corporation which was engaged in the business of a lottery, for the purpose of reimbursing the debenture or lottery-ticket holders.

The plea is projected upon the theory that the debenture holders and the debenture company are in pari delicto. It is a general rule of universal application that courts of justice will not allow one in pari delicto to enforce an executory contract, or recover back amounts paid upon an illegal contract. For the purpose of determining the merits of the defense set up in the amended plea, we will assume that the corporation was engaged in a lottery scheme as alleged in the plea. Let it be observed, however, that the action by the trustee in bankruptcy is not to recover money to pay any prize, but to collect the unpaid stock subscriptions as assets of the bankrupt corporation for the purpose of paying such claims as are legally chargeable against the bankrupt's estate. Lotteries have ever been deemed as contrary to public policy, but the keepers of lotteries were not denounced as criminals by the common law. The rule of par delictum, which finds expression in the maxims, "ex turpi causa non oritur actio," and "in pari delicto melior est conditio defendentis," forbids a suit upon an illegal contract where both parties knowingly and intentionally engage in the illegal act. But there are exceptions to the general rule, which have been recognized by the courts from the earliest times. One of these exceptions or limitations grows out of the nature of the particular transaction, and is thus expressed by Sir George Jessel, master of the rolls, in a comparatively recent English case, "You can not ask the aid of a court of justice to carry out an illegal contract; but in cases where the contract is actually at an end, or is put an end to, the court will interfere to prevent those who have, under the illegal contract, obtained money belonging to other persons, on the representation that the contract was legal, from keeping that money." Sykes *v.* Beadon, L. R. 11 Ch. Div. 170, 193. The reason for this rule is thus stated in 2 Pomeroy's Eq. Jur. § 842 :. "When the contract is illegal, so that both parties are to some extent involved in the illegality, but are not in pari delicto—that is, both have not, with the same knowledge, willingness, and wrongful intent, engaged in the transaction, or the undertakings of each are not equally blameworthy,—a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by cancelling an executory contract, by setting aside an executed contract, conveyance, or transfer, by recovering back money paid or property de-

livered, as the circumstances of the case shall require." In the charter of the debenture company there was no suggestion that .a lottery business was intended. The various certificates issued by it contained very alluring inducements to the investor, and were calculated to appeal very strongly to the cupidity of those uninitiated in the intricacies of modern finance. Our Penal Code denounces as criminal the sale of anything representing a chance in a lottery, gift enterprise, or other similar scheme or device; but no penalty is imposed upon the purchaser of a chance in any lottery scheme. Penal Code, §§ 406-408. If the debenture company was really engaged in a lottery scheme, then it would be guilty of a misdemeanor in the conduct of such business; but those who did nothing more than purchase debenture certificates would not be affected with the corporation's criminality. The lottery acts of 14 George 3, c. 76, forbade the insurance of lottery tickets. It was held in Jaques *v.* Golightly, 2 Wm. Bl. 1073, that money paid as a premium for insuring lottery tickets may be recovered back, though the winnings, if any, can not be recovered, the contract being void by the statute; and the Chief Justice is reported to have said, "The statute is made to protect the ignorant and deluded multitude who, in hopes of gain and prize, and not conversant in calculations, are drawn in by the office keepers." In Mount *v.* Waite, 7 Johns. 434, which was an action to recover money which the plaintiff had paid to the defendant for insuring lottery tickets, Chancellor Kent said, "The plaintiffs here committed no crime in making the contract. They violated no statute, nor was the contract malum in se. I think, therefore, the maxim as to parties in pari delicto does not apply, for the plaintiffs were not in delicto." And this rule has been very generally followed by the American courts. Becker *v.* Wilcox, 81 Neb. 476, 116 N. W. 160, 16 L. R. A. (N. S.) 571, 129 Am. St. R. 690), and cit.; also authorities cited in the opinion of Lumpkin, J., when on the trial bench, which will be found in the case of *Equitable Loan & Security Co.* v. *Waring*, 117 *Ga.* 632 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177). There is nothing in the pleading or the evidence which charges that the debenture holders actively participated in the furtherance of the business of the defendant. They were simply purchasers of certificates from the debenture company, and did not participate in the management of the corporation's affairs. So that it becomes immaterial to de-

cide whether the particular business in which the debenture company was engaged was that of a lottery, inasmuch as, under the allegations in the pleadings and under the proof submitted, the debenture holders were not in pari delicto with the debenture company, even if it be conceded that the debenture company conducted a lottery, which is not decided. The court gave the defendant the benefit of a defense to which he was not entitled; and he has no cause of complaint as to the accuracy of instructions in the submission of that defense, when such instructions were not calculated to injuriously affect his other defense. The charge on the burden of proof was not erroneous. The case was fairly tried on the real issue, under appropriate instructions; and the judgment refusing a new trial is

*Affirmed. Beck, J., absent. The other Justices concur.*