EMPIRE LIFE INSURANCE COMPANY <i>v.</i> BROWN.

1. Under the allegations of the petition the plaintiff would be entitled to a rescission of his contract for the purchase of stock in the defendant corporation, and to a recovery of the consideration paid therefor, if such relief could be had without loss to creditors whose indebtedness was created subsequently to the purchase of the stock.

2. If one purchases stock in a corporation and thereupon the company proceeds to do business upon the basis that he is a stockholder, and incurs indebtedness, such purchaser can not, after insolvency of the company, obtain relief on the ground of fraudulent representations of an agent of the company in selling him the stock, as against creditors thus obtaining rights.

SEPTEMBER 14, 1916.

Equitable petition.  Before Judge Ellis.  Fulton superior court. February 4, 1915.

*Little, Powell, Smith & Goldstein, Robert H. Jones,* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiff in error.

*C. T. & L. C. Hopkins, W. C. Latimer, Dorsey, Brewster, Howell & Heyman,* and *Candler, Thomson & Hirsch,* contra.

EVANS, P. J.   James R. Brown filed an equitable petition against the Empire Life Insurance Company, for the cancellation of his stock certificate as having proceeded by fraud, for the recovery of the money and property paid for the same, and for the liquidation of the company through the medium of a receivership on the ground of insolvency.   The petition alleged as follows: Empire Life Insurance Company was chartered on November 10, 1900, as an insurance company upon the mutual and co-operative assessment plan.   Petitioner purchased from this company $3000 worth of investment certificates issued by it.   On March 6, 1911, the Empire Life Insurance Company was chartered upon a capital-stock plan, to do business of life insurance and write health, accident, industrial, and liability insurance.   The officers of both companies were practically the same.   Petitioner had no knowledge of the existence of the latter company, when W. W. Reid, who was the president of both, some time in the month of February, 1912, represented to him that the company in which he held investment certificates intended to issue stock to all of its certificate-holders in lieu of their investment certificates; the stock was to be of the par value of $100 per share, but the company intended to allow a discount of 20 per cent. to holders of certificates, and to issue to them stock in exchange for their certificates at eighty cents on the dollar; the company was solvent and then in a financial condition to pay an 8 per cent. dividend to holders of stock; there was but one company, and the mutual company was converting its outstanding investment certificates into stock for the better handling of its business.   Reid represented that the stock would be a desirable investment for a man of petitioner's age.   Petitioner was nearly 85 years old, had in a measure retired from business and was living on his farm, and his income was limited to interest on investments and the proceeds of his farm.   Relying on the truth of these representations, he bought 75 shares of stock of the supposed par value of $100 and paid therefor $3000 in cash, and surrendered his investment certificates of the value of $3000. Being old and having no reason to suppose that the par value of the stock had been misrepresented when the stock was delivered to him, he looked at it casually and saw that it purported to be for 75 shares and to have been regularly issued.   He did not detect that the stock was of only $20 par value; this being stated in fine

print in an unusual place upon the face of the stock certificate. After receiving his stock he deposited it in a safety-deposit vault in a bank in Atlanta, which is about forty-five miles away from his home, feeling assured that the stock was of the par value of $100 as represented. A few weeks prior to the filing of the suit he received information that the stock certificates were only of the par value of $20, and upon examination of his stock certificate he found this information to be true. On investigation he found that the stock company had no property at the time of his purchase, and did not begin business until some time thereafter. The representation when he bought the stock was that there was but one company, which proposed to convert the investment certificates into stock certificates and continue business as a stock company; when as a matter of fact a stock company, separate and distinct from the mutual company, had been organized, and he was not told of the fact. The stock company was insolvent. Petitioner tendered the stock certificate. He prayed for a rescission of his contract to buy the stock, for the appointment of a receiver, and for recovery of the consideration paid for the stock.

Demurrers were filed; and amendments to the petition, amplifying the original charges of fraud and insolvency, were allowed. Additional demurrers were filed. The court considered the demurrers in connection with the rule to show cause against the appointment of a receiver, and held that no receiver would be appointed, in view of the exclusive remedy provided by the act approved August 19, 1912, as amended by the act approved August 14, 1914; but the demurrers were overruled. The bill of exceptions is to this judgment. Since the suing out of the bill of exceptions, both parties have brought to the attention of the court a certified copy of a consent order which has been passed in the case of W. A. Wright, as insurance commissioner of Georgia, against the Empire Life Insurance Company, with which the earlier case of James R. Brown against the same company has been consolidated; from which order it appears that it has been adjudicated, with the consent and approval of all of the parties, that the insurance commissioner has the paramount and exclusive right, under the insurance acts of 1912 and 1914, to have charge of and administer the assets of the Empire Life Insurance Company, and that the prayers for receivership and for other extraordinary

relief in the petition of James R. Brown are stricken, and that all rights of James R. Brown be determined in the consolidated cause. The parties have stipulated that the certified order in the consolidated case be filed with the record on the present writ of error. The purpose and effect of the consent order passed in the superior court in the consolidated cause, while the case sub judice was pending on writ of error, is to eliminate the prayers for receivership and extraordinary relief from the petition. Accordingly, we will notice only such questions as are made by the demurrers, independently of petitioner's claim of right for a receiver, injunction, etc.

1. The petition makes a case of actual fraud in the procurement of the contract to buy the shares of stock. A mere statement of the facts as revealed in the petition will suffice to show this. These allegations do not show such lack of diligence on the part of petitioner as to debar him from relief against the imposition practiced upon him, if the relief sought was not incompatible with the rights of the corporation's creditors. If the Empire Life Insurance Company was solvent, or if the plaintiff's relief could be obtained without loss to subsequent creditors of the corporation, the case would fall under the general rule that contracts obtained by fraud may be avoided by the party defrauded.

2. But the petition alleged that the company was insolvent, and sought to have its affairs administered by the court. Though a subscription to stock may have been induced by fraud, the subscriber can not recover the amount paid by him, if there be creditors to an equal or larger amount on debts contracted after his subscription. *Turner* v. *Grangers' Insurance Co.,* 65 *Ga.* 649 (38 Am. R. 801). It was held in *Gress* v. *Knight,* 135 *Ga.* 60 (68 S. E. 834, 31 L. R. A. (N. S.) 900) : "If a person subscribes for stock in a corporation, and thereupon the company proceeds to do business upon the basis of the stock subscribed, and incurs indebtedness, the subscriber can not, after insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them." Petitioner alleges that at the time he purchased the stock the company had not begun business. He further alleges that the company began business before its

capital stock was paid in, contracted indebtedness some of which is secured by mortgage, and was insolvent at the time he brought his suit. Under these allegations the petitioner's right to rescind and recover the price paid for his stock is subservient to the rights of creditors to be paid out of the assets of the insolvent corporation. The only conclusion deducible from the allegations of the petition is that all creditors· of the corporation became such after the petitioner's purchase of the stock; and as the corporation is alleged to be insolvent, the corporate assets became a trust fund for the payment of creditors; and even if the plaintiff be entitled to rescission of his contract of purchase of stock, such relief can not be had to the loss of creditors of the corporation.

*Judgment reversed. By five Justices, all concurring.*