### In re BEAVER COTTON MILLS.

(District Court, N. D. Georgia, N. D.   July 27, 1921.)

No. 7310.

1. **Bankruptcy** ⊚⟶49—**Minority stockholder held entitled to intervene in voluntary bankruptcy proceedings started by directors of corporation.**
   Although collateral inquiry by stockholders as to the action of directors of corporation in bringing litigation will not usually be permitted, a stockholder may present objections to voluntary bankruptcy proceedings.

2. **Bankruptcy** ⊚⟶43—**Appointment of a receiver for corporation by state court does not deprive directors of power to file voluntary bankruptcy proceedings.**
   Since directors of a corporation have general control and, among other powers, the right to put the affairs of the corporation into voluntary bankruptcy, the appointment of a receiver by a state court, since it does not

destroy the corporation or deprive the directors of their power, does not deprive the directors of the right to file a voluntary petition in bankruptcy.

**3. Bankruptcy ☞43—Voluntary petition in bankruptcy by corporate directors held not fraudulent.**

Where the indebtedness of a corporation exceeded the value of its assets and it was no longer a going concern and owed debts which it was unable to pay in full, *held*, that filing a voluntary petition in bankruptcy by the directors was not fraudulent.

**4. Bankruptcy ☞20(2)—Receiver in bankruptcy has a right superior to receiver appointed by state court.**

Where receiver of the assets of corporation was appointed by state court on stockholders' bill, a receiver in bankruptcy of the same corporation has rights to the property superior to those of the receiver appointed by the state court.

In Bankruptcy. In the matter of the Beaver Cotton Mills, bankrupt. Application of A. H. Penfield, minority stockholder, to annul adjudication of the Beaver Cotton Mills as a voluntary bankrupt. Application denied.

Spalding, McDougald & Sibley and Little, Powell, Smith & Goldstein, all of Atlanta, Ga., for intervener.

H. H. Turner, of Atlanta, Ga., for bankrupt.

Dorsey, Brewster, Howell & Heyman, Hugh Howell, Brandon & Hynds, and A. S. Grove, all of Atlanta, Ga., for intervening creditors.

SIBLEY, District Judge. A. H. Penfield, a minority stockholder, seeks to annul an adjudication of Beaver Cotton Mills as a voluntary bankrupt because (1) the directors were without authority at the time of filing the petition, and (2) because the petition was in fraud of his stockholders' bill then pending in the state court.

The facts in outline are these: On April 19, 1920, the stockholders of the Beaver Mills, including Penfield, unanimously voted to unite with two other mills in the organization of a new corporation to be called Couch Cotton Mills, Inc., to which they would sell their respective plants and assets for stock in the new corporation, which would assume their several liabilities. About June 1st, the new corporation was organized. Beaver Mills made a deed to its plant and an assignment of all its assets and received the stipulated stock. The Couch Company took possession of the assets, operated the plant, assumed the debts, amounting to some $114,000, and paid many of them, as was also true as to the other merging mills. In October, 1920, Penfield demanded of the directors of Beaver Mills, who were also directors of the new company and majority stockholders in both, that the property of the Beaver Mills be restored to it on account of misrepresentation of the condition of the other merging companies and of the failure on the part of one of them to clear its property of liens as agreed. The Couch Company passed a resolution offering to do this if Beaver Mills would repay what had been paid to its creditors and assume the loss in operation of its mill since June 1st and its proportion of the overhead expenses of Couch Company during that time. Beaver Mills took no action on the proposal, and Penfield, on December 20, 1920, filed in a

state court his bill in behalf of himself as a stockholder and all other stockholders similarly situated, and, averring the invalidity of the transfer of the Beaver Mills assets to Couch Company because of the fraud and failure of consideration mentioned above, and that the Couch Company and the directors had wasted and converted the assets and mixed them inextricably with those of the Couch Company, he prayed an accounting and a judgment in favor of Beaver Mills against the Couch Company and the directors for the value of the assets so converted and a special lien on such as remained to secure the judgment, and prayed for a receiver for the assets of both the Beaver and Couch Companies to preserve them to meet the judgment. An order was obtained setting a hearing as to the receiver for January 8, 1921, and an injunction issued against the defendants prohibiting them from "in any wise changing the status of the properties of Beaver Cotton Mills." The hearing was not had as appointed.

On May 14, 1921, a petition in involuntary bankruptcy was filed against Couch Cotton Mills, Inc., and a receiver appointed to take charge of all the property in its possession, including that coming from the Beaver Company. On May 17th, Penfield amended his bill in the state court, alleging rights as a creditor and otherwise altering his case and his prayers, which were made to cover a liquidation of Beaver Company and a distribution to its creditors and stockholders. A temporary receiver was appointed and a new hearing set for May 28th, as to making the receivership permanent. The temporary receiver applied to this court in effect for the surrender to him by the receiver for Couch Company of the Beaver Mills properties. This was declined pending the hearing for permanent receiver. On June 8th, the directors, being also the majority stockholders, passed a resolution authorizing voluntary bankruptcy of the Beaver Mills. On June 8th the state court made its receiver permanent "under the rights asserted in the original bill in this case," and on the same day the voluntary petition in bankruptcy was filed and an adjudication had. Besides the intervention of Penfield seeking to annul the adjudication, an intervention by numerous creditors of the Couch Cotton Mills, Inc., who became such between June 1st and December 20th, has been allowed, who allege special rights in the controversy, and seek to uphold the adjudication and pray that the property be retained in the hands of the receiver of this court for marshaling and administration.

[1] 1. A motion is made to dismiss the intervention of Penfield on the broad ground that a stockholder, and especially a minority stockholder, has no standing to object to a voluntary bankruptcy by his corporation. Where directors bring litigation of the corporation before the court, collateral inquiry will ordinarily not be made into the propriety of their action at the instance of stockholders. Their remedy, if any, is in a direct proceeding against the directors in a court of original jurisdiction. Railway Co. v. Alling, 99 U. S. 463, 472, 25 L. Ed. 438. A voluntary bankruptcy, however, presents a special situation, for it involves an abandonment of the corporate enterprise, a thing about which all stockholders ought to have a hearing somewhere, especially

if the corporation be not insolvent. A proceeding by them in any other court would not be a satisfactory remedy because it would involve the enjoining of the proceeding in bankruptcy, which would seem inadmissible and also impracticable, as the directors lose control of the bankruptcy proceeding so soon as they file it. The bankruptcy court, as a court of equity, has power, and should in a proper case exercise it, of inquiring into the propriety of the voluntary bankruptcy. Illustrative cases are In re Associated Oil Co. (D. C.) 271 Fed. 788; Zeitinger v. Hargadine-McKittrick Dry Goods Co., 244 Fed. 719, 157 C. C. A. 167. In each of these cases the corporation was solvent. The assets had been taken from the directors' control by a receiver in the state court, and the only substantial indebtedness was controlled by the directors who could, through it, control the bankruptcy administration. The case alleged in the intervention here is similar to these and is such as to entitle it to a hearing. The motion to dismiss is overruled.

[2] 2. The contention of intervener that the appointment by the state court of a receiver between the time of the passage, on June 8th, of the resolution authorizing the bankruptcy and the actual filing of the petition on June 28th, deprived the directors of power to file it, is not sustainable. The directors of a Georgia corporation have general control of it and exercise its ordinary corporate powers. Wood Mining Co. v. King, 45 Ga. 34. They must be considered as having power to place the company's affairs in voluntary bankruptcy. In re United Grocery Co. (D. C.) 239 Fed. 1016; In re De Camp Glass Casket Co. (C. C. A.) 272 Fed. 558. The appointment of a receiver for the preservation of certain assets pending a suit about them did not destroy the corporation nor deprive the directors of their powers, except that they could not interfere with the receiver's control of the property committed to him. The injunction prohibiting them from "in any wise changing the status of the properties of the Beaver Cotton Mills" disabled them to themselves dispose of the assets, as did the charter in the case of the Glass Casket Co., supra, but would hardly be construed as prohibiting an invocation of the bankruptcy jurisdiction in a proper case, any more than as prohibiting an appeal from the order placing the property in the receiver's hands. Both would be but orderly court procedure which were hardly intended to be prohibited and which, indeed, could probably not lawfully be prohibited, though each, if successful, would defeat the receivership. While the directors were complained against, there was no prayer to oust them. Had there been such, they would nevertheless have remained corporate officers and could act as such, except as restrained by the injunction, up to the very moment of final judgment of ouster. Mining Co. v. Anglo-Californian Bank, 104 U. S. 192, 26 L. Ed. 707. The receivership was granted expressly under the rights asserted in the original bill where the relief sought was a money judgment in favor of the corporation and not a dissolution nor a general receivership for its corporate affairs. And a general receivership applied for or granted does not ordinarily block a bankruptcy. That there should be uniform laws respecting bankruptcies was deemed of such importance as to be made the subject of

special provision in the federal Constitution. The laws of Congress made in pursuance of it are paramount not only by the provision of that Constitution but by the Constitution of Georgia also. Georgia Constitution, art. 12, § 1, par. 1. It will not be doubted that the creditor's right to an administration under the Bankruptcy Law in the federal court (Comp. St. §§ 9585–9656) cannot be defeated by state court receiverships, whether partial or complete, preservative or for final administration. In re Adams & Hoyt Co. (D. C.) 164 Fed. 489; Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505. Voluntary bankruptcies in which insolvency is not a prerequisite and where creditors' rights are not so prominent are within the scope of the constitutional provision. Hanover Bank v. Moyses, 186 U. S. 181, 22 Sup. Ct. 857, 46 L. Ed. 1113. A bankrupt has there a valuable federal right to a discharge, after surrendering all of his property, or the right to effect a composition with creditors by the judgment of a majority in number and amount overruling an unreasonable minority. A state receivership, though four months old, has been held not to preclude the voluntary bankruptcy of a corporation. In re Grafton Gas & Electric Light Co. (D. C.) 253 Fed. 668. Neither the injunction granted nor the appointment of a receiver in itself prevented this action of the directors.

[3] 3. Nor does the evidence show such fraud on the stockholders or on the jurisdiction of either court as to make the petition improper to be entertained. The reasons for the bankruptcy plainly avowed in the resolution of June 8th are that "the affairs of this company are in a chaotic condition and a petition for a receiver is pending in the state court, and there is a question as to whether or not this corporation has merged into Couch Cotton Mills, Inc., and whether or not it has ever separated after having been merged, and the corporation, if separated, cannot make headway financially against debts which it owes"; and the purpose avowed is "that its assets may be properly administered and the corporation relieved from pending suits." The purpose to transfer the litigation and administration from the state to the bankruptcy court, we have seen, is but the exercise of a right and is not in itself a fraud. In re Dressler Producing Corp. (C. C. A.) 262 Fed. 257. Insolvency is not requisite to voluntary bankruptcy and is not claimed in the resolution. But there ought, especially in the case of a corporation whose bankruptcy has not been formally authorized by the stockholders, to be "debts which it is unable to pay in full" in the language of the prescribed form for the petition. Forms in Bankruptcy No. 1 (89 Fed. xv. 32 C. C. A. xxxix). If, contrary to the contention of Penfield, the merger was effectual, the Beaver Mills owes undisputedly $3,000 and $500 to two attorneys, and $1,800 is claimed by Penfield to be due him, and it has nothing to pay with and is insolvent. If, as contended by Penfield, there should be a rescission, the situation is much complicated. Besides the debts just mentioned, such of those assumed by Couch Company for Beaver Mills as have not been paid or novated are still enforceable against Beaver Mills, and such as have been paid or novated are due and owing to Couch Company, subject to such offsets as may exist. The Couch Company claims a balance of $160,000. Penfield, in

this trial, admitted that it would amount to probably $50,000. The plant alone would remain as a substantial asset. Its present value, the evidence indicates, is not exceeding $125,000. The company might or might not be insolvent, according as its account with Couch Company resulted; but in any case it is evidently no longer a going concern and "owes debts which it is unable to pay in full," except by a sale of its plant. This, indeed, is admitted and set up by Penfield in the amendment to his bill. In addition to this, between June 1st and December 20th, the Couch Company, while in possession of the Beaver Mills assets, and on the faith of them, contracted new debts amounting to some $500,000. As to these creditors the contract of Beaver Mills was in the nature of a subscription to the stock of the Couch Company, and if the frauds and failure of consideration claimed by Penfield be established, nevertheless the right of these creditors are probably superior to those of the Beaver Mills in its assets. Empire Life Insurance Co. v. Brown, 145 Ga. 818, 89 S. E. 1085. These rights would either operate to defeat a rescission or would follow the assets into the hands of Beaver Mills as an equitable lien for such balance as was not realized from other assets of Couch Company. In this event the balance would be the equivalent of a further indebtedness of Beaver Mills. The facts proven support the recitals of the resolution and show the propriety of a bankruptcy for the corporation. Nor will the effect in this case be to screen the directors from any liability they may be under. If Penfield has any personal right against them he may prosecute it independently. Any claim the corporation may have will pass to its trustee in bankruptcy. Since Couch Cotton Mills, Inc., is really not the sole creditor, and possibly not the majority creditor, it could not control the administration and shield directors who are also its directors. And being itself bankrupt, its creditors and not its directors will control its claim against Beaver Mills. There is no reason to suppose that all claims will not be duly enforced. The bankruptcy, therefore, does not appear to be fraudulent in fact.

[4] 4. The adjudication in bankruptcy of Beaver Mills being sustained, the question remains of the disposition of the disputed assets. They are now in the hands of the receiver in bankruptcy of Couch Cotton Mills, Inc. On a prior hearing, when Beaver Cotton Mills was not in bankruptcy and the question was one between the receiver of Couch Company in this court and of Beaver Mills in the state court, the bill in the state court was stated by counsel to be and was treated by this court as being one in substance to determine an adverse claim of title to property. As to such a question between a bankrupt estate and the Beaver Mills it was thought the courts were of concurrent jurisdiction, and the state court was held to have priority because of the prior appeal to its jurisdiction on the original bill. Now the question is between the bankruptcy jurisdiction of this court over the property of Beaver Mills and that of the state court on a stockholder's bill. The opposing jurisdictions are no longer concurrent. The paramount character of the bankruptcy jurisdiction and the necessity for having possession of all the bankrupt's assets result in their surrender when

they are actually in the hands of the state court, on orderly procedure therefor. (In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933), unless, indeed, the state court is enforcing some lien not invalidated by the bankruptcy (In re Brinn [D. C.] 262 Fed. 527 and cases cited). But here the property is not and has not been in the possession of the state receiver, and the relief sought in the stockholders' original bill, being only an accounting and a money judgment in favor of the corporation with a claimed lien to secure it, is wholly foreign to that sought in the bankruptcy. In such a case this court, aside from the paramount character of bankruptcy proceedings, would not disable itself to proceed by surrendering possession of the res. Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567, followed in Ward v. Foulkrod (C. C. A.) 264 Fed. 627. Remembering the exclusive character of the bankruptcy jurisdiction, like that in admiralty, the dissent of Judge Walker in the Empire Trust Co. Case would become a concurrence here. No necessity is perceived to appoint a receiver in this case pending the election of a trustee for Beaver Cotton Mills, but the present receiver of this court in possession of the disputed assets will be directed to retain them until the further order of this court.