BROOKE *et al. v.* KENNEDY, receiver.

No. 7932.   FEBRUARY 28, 1931.

462

*Jones, Fuller, Russell & Clapp,* for plaintiffs in error.

*William J. Davis Jr.,* contra.

ATKINSON, J. The main objection offered by plaintiffs in error by demurrer to the petition was that the contract of May 12, 1924, was illegal, and provided that certain funds as therein described should be utilized for the benefit of such organizers, to which

sums they were not entitled. The plaintiffs in error are in the position of having signed this agreement, and, after the failure of the corporation, of pleading the illegality of the alleged contract, and its violation of public policy. It is true that an illegal contract will not be enforced by the courts, and where the contract has been executed the status will not be disturbed. However, there is a further principle of law which requires the parties to be in pari delicto before the courts will refuse relief. In addition, the courts will not enforce a contract where the party insisting upon its enforcement must rely upon an illegal transaction to establish his case. In the instant case the attempt of the organizers was to provide that after it had been organized they should be the recipients of 50¢ from contributions made by others. It may be that after the organization the corporation itself or those interested might prohibit these incorporators from the enforcement of their contract; but the creditors had nothing to do with this. The corporation became indebted to the creditors, and any assets of the corporation ought to respond. The receiver occupies the position of the creditors; and it would not be equitable to allow these organizers and promoters to form and organize a corporation, and the corporation to make debts, and then to permit these organizers to escape their responsibility on the subscriptions of the nature heretofore set out. The subscription was valid. It may be that the provision for additional compensation to the organizers was not valid, but this does not prevent the enforcement of the subscription. The very subscription itself was made for the purpose of "defraying the expense of promoting and organizing The Invisible Kingdom."

The Civil Code, § 4251, declares: "A contract to do an immoral or illegal thing is void. If the contract be severable, that which is legal will not be annulled by that which is illegal." In *Kiser* v. *Westbrook*, 33 *Ga. App.* 208 (2) (125 S. E. 774), it was held: "'Where promoters enter into a secret collateral agreement with a person to induce him to subscribe for stock of a corporation to be formed, the breach of such agreement will not release the subscriber from his liability to the corporation.' *National Bank of Union Point* v. *Amoss*, 144 *Ga.* 425 (3) (87 S. E. 406, Ann. Cas. 1918A, 74)." In *Roney* v. *Crawford*, 135 *Ga.* 1 (2) (68 S. E. 701), it was said: "The bankrupt corporation was a debenture

company, and its creditors were those who had purchased its certificates. The defendant pleaded, in bar of the suit to recover an unpaid stock subscription, that the business of the debenture company was a lottery forbidden by law, and that its debenture holders were in pari delicto, and the suit could not be maintained for their benefit by the trustee in bankruptcy. *Held:* The lottery statutes (Penal Code, §§ 406-408) make penal the selling of lottery tickets, and not their purchase. Assuming the business of the debenture company to come within the operation of the lottery statutes, yet, under the allegations of the plea and the evidence, the investors in the certificates, who did not participate in the management and operation of the company, would not be in pari delicto with the company so as to defeat a recovery of money invested in the enterprise." The extent to which creditors are protected is evidenced in the case of *Empire Life Insurance Co.* v. *Brown,* 145 *Ga.* 821 (89 S. E. 1085). These contracts were assets which came into the hands of the receiver, and from which creditors should be paid. It would require a strong case for a court of equity under such circumstances to refuse the creditors protection through a receiver, when the very purpose of the contract was to promote and organize the corporation.

■ As set forth in the charter, the power is given to the corporation to borrow money, make contracts, give mortgages and deeds, issue promissory notes, bonds, etc. Even viewed as an eleemosynary corporation, "in case of mutual written subscriptions for a charitable purpose, the promise of the others is a good consideration for the promise of each." Civil Code (1910), § 4246; *Young Men's Christian Association* v. *Estill,* 140 *Ga.* 294 (78 S. E. 1075, 48 L. R. A. (N. S.) 783, Ann. Cas. 1914D, 136) ; *Miller* v. *Oglethorpe University,* 24 *Ga. App.* 388 (100 S. E. 784) ; *Willingham* v. *Benton,* 25 *Ga. App.* 412 (103 S. E. 497).

■ The plaintiffs in error demurred to the declaration, on the ground that the subscription agreement had never been accepted. The plaintiffs' amendment says, after setting forth the contract, that "The Mystic Kingdom, a corporation that was chartered by the Superior Court of Fulton County, and thereafter organized and promoted, was the same organization [as The Invisible Kingdom] and was the organization contemplated by the contract and subscriptions sued on, and that subsequent to obtaining the charter, *accept-*

*ance* of the charter, organization, and *promotion* of The Mystic Kingdom thereafter took place, the parties named as defendants herein, and other parties whose names appear on said subscription list, their agents and servants, participating in the organization, promotion, and development of the corporation, and creating debts and obligations pursuant to the subscription contract." The above allegation sufficiently alleges the adoption of the subscription contract by the plaintiffs in error.

*Judgment affirmed. All the Justices concur.*